**Charles SACHS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16593.**

United States Court of Appeals
Ninth Circuit.

July 11, 1960.

Rehearing Denied Aug. 29, 1960.

190

———◆———

Bernard B. Laven, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, Asst. U. S. Atty., Los Angeles, Cal., Paul Hofflund, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before BARNES and MERRILL, Circuit Judges, and BOWEN, District Judge.

MERRILL, Circuit Judge.

Sachs appeals from judgment of conviction of the crime of receiving goods stolen from interstate commerce. 18 U.S.C. § 659. He was charged with having bought, on two occasions in Los Angeles, a total of three cartons of phonograph records from one Berson, who had bought them from one Stephens, who had stolen them from his employer, Ringsby Truck Lines. The principal question upon appeal is whether the District Court erred in admitting evidence of other transactions between Sachs and Berson relating to stolen phonograph records.

The purchases specified in the indictment were made in November, 1957, and February, 1958. Sachs operated a retail record store in Los Angeles. Ringsby Truck Lines, during this period of time, handled shipments of records from Terre Haute, Indiana, destined for Santa Barbara, California. In Los Angeles the shipments were placed on the company's docks.

Both Stephens and Berson testified for the government. Each admitted his part in the thefts. From their testimony it appears that certain cartons of records, constituting a portion of these interstate shipments, were stolen from the company's docks by Stephens and sold to Berson. From the records so purchased in November, 1957, Berson sold to Sachs a carton of Sammy Kaye records. In February, 1958, from the records purchased from Stephens, Berson sold to Sachs two cartons of Duke Ellington records. On both occasions the records were picked up by Berson from Stephens' truck and delivered to Sachs' store. The deliveries were made at night and at the store's rear entrance off an alley.

Between November, 1957, and February, 1958, Sachs had made other purchases of records from Berson, all of which, according to Berson, were stolen records. On each occasion Sachs had paid cash. Deliveries were generally made in the evening through the rear door of Sachs' store. Berson told Sachs he was getting the records from a truck driver and Sachs never questioned him about his possession and never asked for an invoice or receipt. Sachs had once told one of his employees never to mention Berson's name in the store. In August and in October, 1958, Sachs had told an investigator of the Federal Bureau of Investigation that he did not know Berson, had never bought records from him and could not identify a photograph of him.

Sachs regularly objected to each instance in which evidence was admitted of transactions other than those charged in the indictment. On each occasion the objection was overruled. On each occasion the jury was cautioned that the evidence was admitted for a limited purpose and was "admissible only as bearing upon intent." All told, including the final charge to the jury, cautionary instructions were given on six occasions.

Sachs contends that his constitutional right to a fair trial was violated by the introduction of evidence of crimes not

connected with those charged in the indictment.

In Johnston v. United States, 9 Cir., 1927, 22 F.2d 1, 5, certiorari denied 276 U.S. 637, 48 S.Ct. 421, 72 L.Ed. 745, this Court stated:

"The general rule is unquestioned that, when a defendant is put on trial for one offense, evidence of a distinct offense unconnected with that laid in the indictment is not admissible. [Citations] While this is the general rule, the exceptions are so numerous that it has been said: 'It is difficult to determine which is the more extensive, the doctrine or the acknowledged exceptions.' [Citations]."

■ Among the exceptions recognized by this Court is that which permits evidence of wrongful acts where such evidence bears on criminal intent. Tedesco v. United States, 9 Cir., 1941, 118 F.2d 737; United Cigar Whelan Stores Corporation v. United States, 9 Cir., 1940, 113 F.2d 340, 347; Shreve v. United States, 9 Cir., 1939, 103 F.2d 796, 803, certiorari denied 308 U.S. 570, 60 S.Ct. 84, 84 L.Ed. 479. See also, Smith v. United States, 9 Cir., 1949, 173 F.2d 181, 184–185; Enriquez v. United States, 9 Cir., 1951, 188 F.2d 313, 316; Bush v. United States, 9 Cir., 1959, 267 F.2d 483, 489.

■ In the instant case the evidence of other transactions was material as tending to show that the relationship between Berson and Sachs involved a regular course of dealing and not an isolated transaction or two; and, accordingly, as bearing upon the extent of Sachs' knowledge of the nature of Berson's business. It was, then, evidence which bore upon the issue of criminal intent. Under cautionary instructions such as were given here, it was not error to admit this evidence.

Sachs asserts that there was no proof that the transactions other than those charged in the indictment were in interstate commerce. This lack in no way affects the materiality of the evidence upon the issue of intent. See, United States v. Allegrucci, 3 Cir., 1958, 258 F. 2d 70, 73; Clark v. United States, 5 Cir., 1954, 213 F.2d 63, 64; United States v. Sherman, 2 Cir., 1948, 171 F.2d 619, 623.

■ Sachs complains that the District Court improperly restricted his examination of various witnesses. The court, it is true, occasionally exhibited some impatience with what it regarded as repetitious and irrelevant inquiries. In this respect the manner in which the court limits the examination of witnesses rests within its discretionary authority to control the progress of the trial. Glasser v. United States, 1942, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680. We find here no abuse of discretion nor any indication of prejudice to Sachs.

■ Sachs complains that certain phonograph records were admitted in evidence without proof that they were connected with the crimes charged. No objection was made to such admission. Further, we find no prejudice.

■ Sachs contends that there was no sufficient proof that the value of the records exceeded $100, as charged in each count. There were sixty records to a carton. From the testimony it appears that the suggested list price was $3.98 per record; a dealer's customary price was $2.47 per record. The price actually paid by Sachs, according to Berson, was $84.00 a case. "Value," as defined in 18 U.S.C. § 641, means "face, par, or market value, or cost price, either wholesale or retail, whichever is greater." There was, then, evidence from which a value in excess of $100 could be found upon each count.

Sachs complains of certain instructions given to the jury as confusing. The instructions taken as a whole, we are satisfied, were consistent and clear.

Affirmed.