Haywood ERWING, Appellant,

v.

UNITED STATES of America, Appellee.

Leroy JEFFERSON, Berthelma Nolen and Haywood Erwing, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17098 (Consolidated).

United States Court of Appeals Ninth Circuit.

Nov. 16, 1961.

Edgar Paul Boyko, Los Angeles, Cal., for appellants.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Crim Div., and Meyer Newman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

Two appeals are involved in this consolidated proceeding. Each appeal is from a separate judgment in a separate criminal prosecution under the narcotic laws of the United States.

Two indictments were returned by the grand jury on the same day. In one indictment containing two counts, the appellant Erwing alone was charged: (1) with selling, and facilitating the sale, on or about January 6, 1959, of 9 grams and 300 milligrams (.328 oz.) of cocaine to Constance Marie Hamlett, hereinafter designated Hamlett, and (2) with receiving, concealing, transporting, and facilitating the transportation and concealment of the same cocaine on the same day, both offenses in violation of Title 21 U.S. C.A. § 174.[1] Following a jury trial, Erwing was convicted of both offenses and sentenced to a term of imprisonment of 15 years on each count, such sentences to run concurrently. Hereafter we will refer to this prosecution as Case A.

The other indictment is in five counts. Count One charged appellant Nolen, one Leroy Jefferson, whose appeal is not before us at present, and unindicted conspirators Juanita Smith, Fred D. Berry and Hamlett with conspiracy to receive, conceal, and facilitate the concealment of cocaine in violation of Title 21 U.S.C.A. § 174. Count Two charged Erwing alone with selling and facilitating the sale of approximately one teaspoon of cocaine to Leroy Jefferson on December 30, 1958. Count Three charged Erwing alone with selling and facilitating the sale of approximately one-half teaspoon of cocaine to Juanita Smith on or about December 31, 1958. Count Four charged the appellant Nolen and Leroy Jefferson with receiving and concealing approximately one teaspoon of cocaine on December 30, 1958. Count Five charged the appellant Nolen and Leroy Jefferson with receiving and concealing approximately one-half teaspoon of cocaine on or about December 31, 1958.

Following a jury trial, appellant Nolen was acquitted of the conspiracy set forth in Count One and convicted of the offenses set forth in Counts Four and Five. Leroy Jefferson was convicted of the offenses set forth in Counts One, Four

---

1. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law * * * shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. * * *

"Whenever on trial for a violation of this section the defendant is shown to have or have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to . authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

and Five. Erwing was convicted of the offenses set forth in Counts Two and Three. Appellant Nolen was sentenced to a five year term of imprisonment on each of the two counts, such sentences to run concurrently with each other. Appellant Erwing was sentenced to a term of imprisonment of 15 years on each of the two counts, such sentences to run concurrently and also to run concurrently with the like sentences imposed in Case A. Hereafter we shall refer to the prosecution of appellants Nolen and Erwing as Case B.

We will first consider the appeal of Erwing in Case A. The judgment of conviction of the defendant Erwing in this case rests upon a foundation supplied in large part by the testimony of Hamlett, an unindicted conspirator in Case B, who was arrested by narcotic agents earlier in the same day of Erwing's arrest while carrying cocaine from a place where she had previously concealed it to the apartment of her paramour, Fred D. Berry, an unindicted conspirator in Case B, who had been arrested the day before on charges of violating the narcotic laws, had supplied cocaine to Hamlett on previous occasions, had twice previously been convicted of violating the narcotic laws and once had been convicted of violating the Mann Act, 18 U.S.C.A. § 2421 et seq. No prior convictions of Erwing appear in the record. Following the arrest of Hamlett, she agreed to cooperate with the narcotic agents by arranging to purchase cocaine from Erwing.

We have carefully reviewed all of the evidence in this case and are left with the conviction that if the evidence established that Erwing had had or had possession of the cocaine, such possession, under the theory of the Government, could have been actual possession only. Upon no reasonable view of the evidence could it be said that such possession was constructive.

The only instructions given by the district court on the subject of possession are as follows:

"Despite the fact that the indictment contains elements that the narcotic drug involved has been imported into the United States contrary to law, and that the defendant knew such to be the fact, nevertheless, the statute makes it unnecessary for the Government to offer any evidence in support of the charge as to these elements if the Government shows that the defendant was in constructive or actual possession of the narcotic. If constructive or actual possession is shown, it is then incumbent upon the defendant to go forward with the evidence and show that he came into possession of the narcotic legally.

"In this connection, I charge you that if you find the defendant had in his possession the forbidden drug, namely the narcotic drug, such possession, actual or constructive, alone would authorize conviction unless such possession is explained to the satisfaction of the jury."

"As I have explained to you, a defendant on trial may overcome inferences arising against him from actual or constructive possession of narcotics by facts and circumstances and by satisfactory proof that in this case possession of narcotics did not involve a violation of the statute, either because the narcotics were not imported contrary to law or because he had no knowledge of unlawful importation."

"It is, however, accurate to say that the explanation offered of such possession if it is to serve the defendant's purpose, must not only be believed by you, the jury, but must also be one that shows the possession was lawful under the statute. Such explanation serves no purpose if it shows guilty knowledge by defendant offering any such explanation."

"In connection with the explanation that a defendant may offer for his alleged possession of narcotics, I wish to caution you that a defend-

ant may avail himself of his constitutional rights and need not take the stand. No unfavorable inference should be had against a defendant merely because he fails to testify on his own behalf."

It is to be noted that the instructions speak of "possession" and "constructive possession," but do not define in any manner the meaning which the jury should ascribe to those terms or the implied distinction in meaning between them. The meaning of such terms and any distinction in meaning between them were left entirely to the individual views of each juror.

Attention is called to the fact that in Johnson v. United States, 270 F.2d 721 (9th Cir. 1959) certiorari denied 362 U.S. 937, 80 S.Ct. 759, 4 L.Ed.2d 751, we approved an instruction relating to possession and constructive possession which was given in that case. The instruction approved is set out haec verba in that opinion. In that instruction the court defined the terms "possession" and "constructive possession" and the distinction in meaning between them.

The giving of the instruction that the statutory presumption should be applied if the cocaine were in the constructive possession of Erwing could only serve to confuse and mislead the jury in a case where the evidence left the guilt or innocence of Erwing in a twilight zone and wherein resort to the statutory presumption was crucial and indispensable to the conviction.

In our view, the vice in the instructions given affected the substantial rights of the appellant and constitutes error, prejudicial in character. On a new trial instructions on constructive possession should be given only if the facts on such trial justify the giving thereof.

Since the judgment of conviction must be reversed and the cause remanded for new trial, we deem it unnecessary to discuss other errors urged by appellant.

The judgment of conviction is reversed and the cause remanded with instructions to grant the appellant a new trial.

■ We shall now consider Case B. The offenses charged in the indictment in this case have been set out above. They are separate, distinct, unconnected and unrelated to the offenses set forth in the indictment in Case A.

A review of the evidence relating to the appellant Nolen leads us to the conviction that the evidence is insufficient to have justified the district court in submitting the case to the jury. In reaching such conclusion, we are mindful that the jury was the sole judge of the evidence in the case and the credibility of witnesses.

The judgment of conviction of appellant Nolen is reversed and the cause remanded with instructions to dismiss the indictment as to her.

■■ Appellant Erwing contends on this appeal that the district court committed prejudicial error in the admission of testimony and exhibits relating to a narcotic offense not set forth in the indictment. We have reached the conclusion that such contention must be upheld.

The circumstances surrounding the admission of such evidence must be reviewed. At the close of the Government's direct examination of Hamlett in its case in chief, a colloquy occurred between court and counsel for the Government, outside the presence of the jury but with all counsel present, in which Government counsel stated that he was about to commence questioning Hamlett on the January 6th, 1959, purchase of cocaine from Erwing. The court said: "I am not going to admit anything that concerns the trial which was held the other day. I am not going to admit it. If it had been all in one indictment it would be a different thing." Counsel for the Government suggested that evidence of a subsequent offense would be probative in the event Erwing should deny that he didn't know what cocaine was or should claim mistake. The colloquy ended upon the statement of the court that such testimony would not be probative, and "I am not going to admit anything subsequent to this charge."

During the cross-examination of Hamlett by counsel for Nolen and Jefferson—not by counsel for Erwing—she was questioned at some length about various arrests for prostitution and narcotic violations. In response to such questions, Hamlett admitted many arrests for prostitution and solicitation and her arrest on January 6th, 1959, on a charge of possessing cocaine; that bail had been fixed in the amount of $10,000, and that she was released from jail without furnishing bail. The cross-examination of Hamlett by counsel for Erwing did not touch on the subject of her arrest on January 6th, 1959.

Before commencing the redirect examination of Hamlett, counsel for the Government, out of the presence of the jury, stated to court and counsel that he intended to ask the witness all about the events of January 6th, 1959. The court stated that the cross-examination of the witness by counsel for Nolen and Jefferson relating to her arrest on January 6th, 1959, "opened up the January 6th transaction" and that "the Government has a right to ascertain the facts of that case." In the presence of the jury, the court stated that the Government intended to offer some evidence which must not be considered against Nolen and Jefferson "but is offered only for the purpose of proving Counts Two and Three which refer to two sales of this narcotic drug." These counts relate only to Erwing. To this statement of the court, Government counsel stated that "It would not be offered to prove Count Two or Three, but to negative the idea that the defendant did not know what cocaine was, and that he did have a scheme and plan and mode of operation in selling cocaine."

Over the repeated and continuing objections of Erwing's counsel, there was received detailed evidence relating to the offenses of Erwing occurring on January 6th, 1959. Such evidence consisted of the testimony of Hamlett, two of the officers who participated in the events of January 6th, 1959, and the packages of cocaine which were received as exhibits in Case A. We believe it is fair to state that a very substantial part of the Government's evidence in Case A was permitted to go to the jury in Case B.

We do not agree that the testimony of Hamlett on cross-examination opened up the events of January 6th, 1959. Such cross-examination, in so far as pertinent to our discussion, reveals only the circumstances relating to Hamlett's arrest and release without bail on January 6th, 1959, for narcotic violations admittedly committed by her on that day. Such testimony was elicited from her for the purpose of attacking her credibility. Such cross-examination did not touch upon the events surrounding the arrest of Erwing on a separate narcotic charge on the night of the same day.

However, the problem as to the admissibility of the questioned evidence still remains, if such evidence is admissible on other grounds.

It is clear that the district judge, who also presided at the trial of Case A, which was completed immediately prior to the commencement of the trial of Case B, regarded the offenses set forth in the indictment in Case A as distinct offenses unconnected with the offenses set forth in the indictment in Case B, and accordingly initially ruled that such evidence was inadmissible in Case B. In our view such ruling was correct and should have been adhered to. The general rule prevailing in this circuit is that when a defendant is on trial for a specific offense evidence of a distinct offense unconnected with that charged in the indictment is inadmissible. Wright v. United States, 192 F.2d 595, (9th Cir. 1951); Sachs v. United States, 281 F.2d 189, (9th Cir. 1960); Teasley v. United States, 292 F.2d 460 (9th Cir. 1961). We are aware that many decisions of this and other circuits recognize many exceptions to this general rule. A study of many of the decisions which apply exceptions to the general rule reveals that whether the general rule or an exception thereto should be applied depends upon the facts and circumstances of each case. Our review of the record in the instant

 

case convinces us that the general rule is applicable to the facts of this case.

To hold under the facts of this case that Erwing's activities on January 6th, 1959, are relevant and hence admissible on Erwing's intent and knowledge in the commission of offenses occurring on December 30th, 1958, would, in our opinion, for all practical purposes emasculate the salutory general rule.

The admission of the questioned evidence in this case constitutes prejudicial error which deprived Erwing of a fair trial. Our conclusion makes it unnecessary to review other contentions made by Erwing on this appeal.

The judgment of conviction is reversed and the cause remanded with instructions to grant appellant a new trial.