**Clifton Bert CRAFT, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 22311.**

United States Court of Appeals
Ninth Circuit.

Oct. 31, 1968.

Warren P. Reese (argued), San Diego, Cal., for appellant.

Shelby Gott (argued), Asst. U. S. Atty., Edwin L. Miller, U. S. Atty., Joseph A. Milchen, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before BARNES and HAMLIN, Circuit Judges, and CROCKER,* District Judge.

* Honorable M. D. Crocker, District Judge, Eastern District of California, sitting by designation.

CROCKER, District Judge:

This is an appeal from a judgment convicting the appellant, Clifton Bert Craft, of the crimes charged against him in a three-count indictment. The three counts arise from the alleged clandestine introduction of approximately six pounds of marihuana into the United States from Mexico by co-defendants Larry L. Wolfe and Eleanor Rebecca Orman. Count One charged the appellant with aiding and abetting in the illegal importation of marihuana in violation of Title 21 U.S.C. Section 176a (illegal importation of marihuana) through violation of Title 18 U.S.C. Section 2 (aiding and abetting). Count Two charged the appellant with the concealment and transportation of illegally imported marihuana in violation of Title 21 U.S.C. Section 176a. Count Three charged the appellant with the illegal importation of merchandise in violation of Title 18 U. S.C. Section 545, namely 3 switchblade knives. Following a verdict of guilty on all counts, the appellant was, on June 19, 1967, given a five year sentence on each count to run concurrently.

The evidence offered by the Government in support of its charges may be summarized as follows:

On October 16, 1966, Immigration Inspector Acuna was on duty inspecting vehicular traffic entering the United States from Mexico at the Port of Entry, San Ysidro, California. At approximately 3:45 a. m., Larry Wolfe and Eleanor Orman entered the United States in a red 1961 Ford, with license number OAE–731. Acuna had a "lookout" list containing the license number OEA–731, so he referred the vehicle to the secondary area for further inspection. Customs Inspector Lasher discovered three bricks of marihuana and three switchblade knives when he inspected the 1961 Ford at the secondary inspection area.

On October 16, 1966, Customs Inspector Yates was on duty inspecting pedestrian traffic entering the United States from Mexico at San Ysidro. At approximately 3:40 a. m., he observed the appellant enter the United States. The appellant appeared nervous and Yates thought that it was "unusual" for an American to enter at that hour. Appellant, when stopped, offered the explanation that he had become separated from his friends and was returning on foot.

Four or five pedestrians later, Yates observed Horn entering the United States. He also appeared to be quite nervous. Horn offered the same explanation as the appellant for the lateness of his re-entry into the United States.

Later in the morning of October 16, Customs Agent Ellis, acting upon information given to him by Wolfe, asked appellant and Horn to accompany him to the Customs Office from a point near the Greyhound bus depot. Upon arriving at the Customs Office, Ellis advised appellant that he did not have to make any statement to him; that any statement he did make could be used against him in any court proceedings; that he was entitled to an attorney during that interrogation or any subsequent thereto; and if he could not afford an attorney, the Government would provide one for him.

After being so advised, the appellant denied knowing Larry Wolfe, the co-defendant who had been stopped at the vehicular inspection point. Subsequently, it was ascertained that the appellant and Wolfe were fellow employees. As it turns out, Wolfe, Orman, Horn and the appellant had planned to take a trip to Mexico in order to obtain amphetamine sulphate tablets for Wolfe, stag movies and a false driver's license for Orman.

All four travelled to Mexico and on the return to the United States appellant and Horn felt it would look better if the appellant and Horn crossed the border on foot in order to avoid suspicion.

Larry Wolfe testified on behalf of the Government. Wolfe and the appellant worked at the same company, and Wolfe had only known the appellant for a week.

Appellant had sold Wolfe Benzedrine prior to the trip to Mexico. Wolfe had wanted the Benzedrine in order to stay awake while he was working two jobs.

Wolfe also testified that he had seen or heard that the appellant used marihuana. Wolfe further testified that he had observed the appellant remove pills from the coat he had worn to Mexico, and swallowed some himself, and gave some to Horn. This event occurred the day that Wolfe, Horn and the appellant were released from custody. Appellant stated that "the Customs officer was kind of stupid because he [appellant] got by him having some pills in his coat and they didn't catch him with the pills." [R.T. at 69.]

Wolfe further testified that appellant told him that they [appellant and Horn] would "get me later" if he said anything. Id. at 52. When Wolfe and the appellant were at the jail after they had been arrested, appellant told Wolfe if all the male parties testified against Orman they would "get out easier." Id. at 54.

It is appellant's first contention that the trial court erred in permitting officers Acuna and Lasher to testify over appellant's objection to the "lookout" describing the vehicle containing the contraband, for the same reason the testimony was hearsay, prejudicial to the appellant and not admissible for any purpose.

First, the Government contends that the references in the testimony of Acuna and Lasher to the fact that the vehicle in question had a license similar to, but not identical with, a license number which was on the "lookout" was not hearsay. A witness is permitted to testify to what he did and observed. The testimony concerning the "lookout" was relevant to explain why the vehicle was pulled over for further customs inspection. Both Acuna and Lasher testified to the similarity between the vehicle's license number and the "lookout," a fact which they both observed. The letters before the numerals on the "lookout" were "OEA" and the vehicle's were "OAE". This similarity was the cause for the further search of the vehicle. Therefore, the testimony was relevant and not subject to the hearsay rule.

There is also the question of whether the appellant has standing to complain of the search of the automobile since he was neither the owner of the vehicle nor present at the time of the search. The appellant's involvement was the result of Wolfe's identification of appellant to Agent Ellis. There is no direct causal relationship between the "lookout" and appellant's apprehension. Therefore, the appellant cannot complain of the derivative evidence acquired as a result of the search.

Appellant relies on only one case, that is, Sanchez v. United States, 293 F.2d 260 (8th Cir. 1961), in support of his contention that the Customs officers' testimony regarding the "lookout" was hearsay, prejudicial and inadmissible. Sanchez is distinguishable from the case at hand, as the objectionable testimony by a witness was what other people had said. In the case at hand, there was no testimony as to the nature of the information received resulting in the placing of the vehicle on "lookout", but only the fact that there was a "lookout."

The appellant's next contention is that the damaging statements made by the appellant while in custody should not have been admitted without a showing that the appellant voluntarily, understandingly and intelligently waived his constitutional protections against self-incrimination and his right to have counsel present at the interrogation. The record is contrary. Agent Ellis orally communicated the four-point warning required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Furthermore, the appellant was given a document which read as follows:

"We are investigating marihuana smuggling. You do not have to make any statement or answer any ques-

tions. Any statement you make could be used against you in a court of law. You have a right to remain silent. Do you understand what I have told you? You have the right to consult with an attorney before making any statement or answering any questions. You have the right to have an attorney present with you during the making of any statement or the answering of any questions. Do you want counsel, or are you willing to give up your right to remain silent and talk to us without consulting a lawyer and having one present during the making of your statement?"

Appellant said that he understood the contents of the document and signed it.

The appellant argues that the appellant was deprived of the assurance which an accused is to be given when an investigation focuses on him, in that the officer told the accused that any information elicited from him "could be" instead of "will be" used against him. The language used left no uncertainty as to the consequences of his making the statements. Therefore, the appellant was sufficiently apprised of his rights.

The pivotal question is whether the appellant voluntarily, intelligently and understandingly waived his right to counsel when being interrogated. *Miranda* imposes the burden on the prosecution to show a waiver. Appellant was apprised of his rights twice, once by Agent Ellis and a second time when he was presented the document, supra. Appellant acknowledged on cross-examination that he read the document and signed it. Bell v. United States, 382 F.2d 985 (9th Cir.), settles the issue of waiver of the rights adversely to appellant. In that case the court held that written advice to the accused was sufficient to apprise him of his rights. The present case is stronger because the appellant had the benefit of both oral and written notice of his rights, and not just written as in the *Bell* case. Therefore, the Government has sustained the burden of showing a waiver on the part of the appellant.

■ Appellant urges that the testimony of the co-defendant, Wolfe, involving Benzedrine, marihuana and unidentified pills, which were not the subject of the offenses charged, prejudicially showed bad character and should not have been admitted. Evidence of offenses or misconduct not charged in the indictment is inadmissible unless relevant. We announced the general rule in Erwing v. United States, 296 F.2d 320 at 324 (9th Cir. 1961), to be:

"The general rule prevailing in this circuit is that when a defendant is on trial for a specific offense evidence of a distinct offense unconnected with that charged in the indictment is inadmissible."

But, we then said:

"We are aware that many decisions of this and other circuits recognize many exceptions to this general rule. A study of many of the decisions which apply exceptions to the general rule reveals that whether the general rule or an exception thereto should be applied depends upon the facts and circumstances of each case." Id. at 324.

Wigmore on Evidence (3rd Ed. Vol. 2, p. 200, § 302) states:

" * * * it is at least necessary that prior acts should be *similar*. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance."

■ In Theobald v. United States, 371 F.2d 769 (9th Cir. 1967), the prosecution was permitted to present the testimony of a witness that about the time of the illegal importation, charged in *Theobald*, defendant had conversed with witness about buying marihuana from the defendant. The court allowed the evidence to show motive, and the testimony was not inadmissible because it revealed reprehensible conduct by defendant other than that with which the defendant was charged. In this case, the Government's purpose for introduc-

ing the evidence of the previous sale of Benzedrine went to the issue of "intent to defraud," an essential element of the Government's case.

In establishing the "intent to defraud" element, it is necessary to show that appellant possessed such an intent. The Government first proved that one purpose of the trip to Mexico was to purchase amphetamine sulphate tablets and smuggle them into the United States. The reason behind Wolfe's desire for the appellant to acquire some amphetamine sulphate tablets thus became important. Wolfe testified that he wanted them in order to stay awake on his job, since he was attempting to hold down two jobs. Wolfe explained the appellant's presence and purpose of the trip to Mexico to smuggle merchandise into the United States resulted from the fact that on a previous occasion appellant revealed that he was a source of such pills, as he had sold Benzedrine to Wolfe. Thus, the purpose of the trip to Mexico involved the essential element of "intent to defraud." The evidence of the prior misconduct (the sale of Benzedrine) was of a sufficient probative value to outweigh the prejudicial effect and therefore was admissible.

■ The appellant also urges that the admission of the testimony of appellant's previous association with marihuana was not the subject of the offenses charged, prejudicially damaged the appellant's character, and should not have been admitted. It seems appropriate to analyze the evidence of prior use of marihuana to deduce what implications it has relative to the offenses charged. The first and most obvious implication is that such prior use suggests the inclination of the appellant to procure marihuana. The question still remains whether prejudicial effect (implication of bad character and a criminal disposition) is outweighed by any probative value which may be attributable to the evidence of prior use of marihuana. The cases indicate that other offenses or misconduct must be similar to the offense charged if the evidence is to be admissible. Anthony v. United States, 256 F.2d 50 (9th Cir.); Enriquez v. United States, infra.

The fact that appellant had previously used marihuana, and within one week of the smuggling (Wolfe had only known the appellant for a week) does suggest that the appellant might resort to smuggling an amount of marihuana for his own personal use. Therefore, evidence of prior use of marihuana would be relevant.

This evidence becomes more relevant when viewed in light of the case cited by the appellant, Theobald v. United States, supra. There, the evidence of a discussion about the sale of marihuana was held admissible in connection with the charge of smuggling a commercial quantity of marihuana, 44 pounds. In the case at hand, the prior use would go to the issue of "knowingly" smuggling a quantity of six pounds, a quantity for personal consumption. The amount here provides as much relevant motive for smuggling with the prior act as it did in *Theobald* and that prior act.

■ Wolfe also testified that on his release from the County jail, appellant removed some pills from his coat and swallowed them, commenting on the failure of the Customs officers to discover them. This evidence is subject to appellant's previous argument that such evidence tends to create the impression of bad character and predisposition is inferred. Evidence of this type may be admitted in a given case if its probative value, relative to an essential element of proof, outweighs its prejudicial effect. The question in respect to the concealment and use of the unidentified pills is whether this prior misconduct is admissible under any exception to the general rule stated above.

When evidence of misconduct is offered it is not rejected because bad character is irrelevant. On the contrary, it is said to have the effect of villifying the accused's character in the eyes of the jury and therefore should not be ad-

mitted. Enriquez v. United States, 314 F.2d 703 (9th Cir. 1963). The appellant's comment regarding the Customs officer is ambiguous; it may be construed to imply the appellant secured the pills in Mexico and clandestinely brought them to the United States, or that his possession of them upon re-entering the United States simply remained undisclosed. Even if it were concluded that the concealment reflected an attempt to evade Customs laws—a factor in the Government's charges—this conduct cannot be said to be sufficiently similar to justify deviation from the general rule, allowing the evidence to be presented to the jury. The court in *Enriquez*, supra, emphasized the dissimilarity of offenses resulting from the clear difference in the subject matter. See 314 F.2d, page 714. Thus, the fact that appellant may have smuggled Benzedrine into the United States does not afford proof he smuggled marihuana and switchblade knives into the United States but it is some evidence of "intent to defraud."

The prosecution may have been over-zealous in offering evidence of various other acts of misconduct, but it was not prejudicial error, in view of all the evidence in the case.

The court's instruction that prior acts could not be considered for any purpose unless they first found beyond a reasonable doubt that the accused did the particular acts charged in the indictment and could then consider prior acts only to determine state of mind or intent, properly guided the jury's consideration of these prior acts.

■ Appellant's contention that his prior felony should not be used for impeachment is without merit as it is well settled in this circuit that conviction of a felony may be considered in determining the credibility of a witness.

Affirmed.