Lawrence DeCARLO and Daniel Thomas DeCarlo, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 22568, 22568–A.

United States Court of Appeals, Ninth Circuit.

Feb. 10, 1970.

Roland W. Coffey (argued), Chula Vista, Cal., for appellant.

Shelby R. Gott (argued), Asst. U. S. Atty., Harry D. Steward, U. S. Atty., San Diego, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and PREGERSON *, District Judge.

DUNIWAY, Circuit Judge:

Lawrence and Daniel DeCarlo appeal from their conviction under each of three counts charging:

(1) aiding and abetting Michael and Sharilyn Brown in smuggling marihuana which should have been invoiced and importing marihuana contrary to law, (2) aiding and abetting the same persons in knowingly concealing and facilitating the transportation and concealment of marihuana which had been imported contrary to law, and (3) conspiring with the Browns to import and to smuggle marihuana into the United States, all in violation of 21 U.S.C. § 176a. Each was given concurrent sentences. We affirm.

1. *The facts.*

Customs agents found eleven kilo-packages of marihuana concealed in a vehicle owned by Michael Brown when Brown drove his car into the United States at San Ysidro, California, from Tijuana, Mexico. The discovery of the marihuana in the Brown car provided the finis to a trip to Mexico begun jointly by Michael Brown, his wife Sharilyn, and Danny, Larry, and Miriam DeCarlo. Brown picked up the DeCarlos at their home in Inglewood, California at about 11:30 a. m. on July 30, 1966. After picking up Brown's wife, the group journeyed to Tijuana. Brown testified at trial that once the group got to Tijuana, Danny DeCarlo began looking for an American to see about obtaining some marihuana. Danny had indicated that he had dealt with the American before. Then, while all five were present Danny said that the American did not have the amount of marihuana he wanted and that he would try talking with a Mexican with whom he had previously dealt.

Brown also testified that the three men negotiated with the Mexican, finally agreeing to purchase the marihuana at a time when all of the Browns and DeCarlos were in the Mexican's taxicab. Danny and Brown went to the cab driver's home where they obtained the marihuana for $400. They concealed the marihuana in Brown's car and returned to downtown Tijuana from which the entire party left for the border. Brown also said that the DeCarlos alighted from the car just before reaching the border, and according to a pre-arranged plan were to walk through the border and meet at a restaurant on the American side. Mrs. Brown corroborated her husband's testimony.

---

* Honorable Harry Pregerson, United States District Judge, Central District of California, sitting by designation.

The DeCarlos took the stand and testified that the entire journey was a pleasure trip and that they became separated from the Browns in Tijuana and thus had to return by themselves on foot.

### 2. *Evidence of other offenses.*

The DeCarlos first assert that certain portions of the testimony given by Brown were inadmissible and prejudicial. The testimony involved admissions by the DeCarlos to Brown that the DeCarlos had previously smuggled marihuana into the United States without detection:

"Q. [Prosecutor] Have you had any conversation with any of the DeCarlos at any time concerning prior marijuana smuggling ventures?

A. [Brown] Yes, I have.

Q. When did this conversation take place, as nearly as you can recall?

A. Well, at various times, from one or two months to prior to when we went to Mexico.

Q. Can you tell us specifically what was said concerning a trip in which they brought marijuana into the United States?

A. I remember one in particular because it was kind of funny. When they got to the border, I guess a routine search was made where they checked the trunk and underneath the back seat where they lifted the back seat and Danny and Larry said they could see six packages from where they were outside the car, but the customs officer didn't see them."

Appellants' counsel made no objection to the admission of this testimony. The question, then, is whether its admission was plain error affecting substantial rights under Rule 52(b), F.R.Crim.P. Ramirez v. United States, 9 Cir., 1961, 294 F.2d 277, 282. See also Darden v. United States, 9 Cir., 1969, 405 F.2d

1054; Urquidi v. United States, 9 Cir., 1967, 371 F.2d 654, 657.

■ The evidence was material to show motive or intent. While the DeCarlos admitted that they went on the trip to Tijuana with the Browns, they were not in the car at the border when the marihuana was found. The DeCarlos' contention that they went on the trip purely for pleasure was negated to some extent by the evidence to which they now object. Also, the third count of the indictment charged a conspiracy among the Browns and the DeCarlos to smuggle marihuana. Statements to Brown by the DeCarlos that they had been successful at earlier smuggling attempts were relevant to the question of whether an agreement to smuggle marihuana had been reached in the present case. The situation is similar to that in Theobald v. United States, 9 Cir., 1967, 371 F.2d 769. The testimony was admissible. Its admission was not error, much less plain error. United States v. Jiminez-Robles, 9 Cir., 1969, 415 F.2d 308; Craft v. United States, 9 Cir., 1968, 403 F.2d 360; Asher v. United States, 9 Cir., 1968, 394 F.2d 424, 429; Metheany v. United States, 9 Cir., 1968, 390 F.2d 559, 563; Reed v. United States, 9 Cir., 1966, 364 F.2d 630, 633.

### 3. *Evidence as to the use of marihuana.*

The DeCarlos complain of the admission of Sharilyn Brown's testimony that she and her husband occupied the front seat of the car during the trip to Tijuana while the DeCarlos were riding in the back, and that someone in the back produced a marihuana cigarette, lighted it, passed it among the DeCarlos, and then handed it to her in the front seat.

Again, no objection was made to the admission of this testimony nor was any limiting instruction requested.

■ This court has approved the admission of evidence of prior use of mari-

huana in similar circumstances despite the general rule that evidence of prior criminal misconduct is inadmissible. Craft v. United States, *supra,* 403 F. 2d at 365. See also Klepper v. United States, 9 Cir., 1964, 331 F.2d 694, 698–699; Teasley v. United States, 9 Cir., 1961, 292 F.2d 460, 466, 467. At the very least, the smoking incident indicates that the DeCarlos were familiar with marihuana and that they were quite willing to include the Browns in their familiarity and usage; this event accordingly tends to impeach their testimony that the trip with the Browns was solely for pleasure, and it tends to reinforce the existence of a conspiracy between the Browns and the DeCarlos.

### 4. *Self-incrimination.*

■ The DeCarlos next assert that the evidence of prior marihuana offenses was so damaging that they had to take the stand to deny the incidents. They argue from this that they were in effect compelled to testify in violation of their privilege against self-incrimination.

Since appellants did not object to the admission of any of the evidence about which they complain, and since it was admissible even if they had objected, that evidence was properly before the jury, and the jury had been given standard instructions on how to use that evidence.[1] Thus, here there was no subtle erosion of the privilege against self-incrimination as there was in Griffin v. California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. Rather, any compulsion to give up the right not to testi-

fy came from appellant's own tactical estimates derived from consideration of direct evidence appropriate for the jury's consideration. The contention is frivolous.

### 5. *Failure to give certain instructions.*

■ The DeCarlos also assert that their right to a fair trial was violated because the trial court failed to limit appropriately the use to which the evidence of prior marihuana offenses could be put. The substance of the trial court's instructions on this subject has been set out at note 1, *supra.* Appellants did not object to these instructions and did not request any instructions, as required by Rule 30, F.R.Crim.P. The court was not required to give further instructions *sua sponte.* United States v. Johnson, 9 Cir., 1969, 415 F.2d 653, 655, and cases there cited.

### 6. *Accomplice testimony.*

■ The DeCarlos also object to the use of the uncorroborated testimony of Michael Brown to sustain their conviction. As this court said in Darden v. United States, *supra:*

"It is well established that a conviction in federal court may be based on the uncorroborated testimony of an accomplice, if the testimony is not 'incredible or unsubstantial on its face.' This is true even where the accomplice hopes to receive lenient treatment. * * *" (405 F.2d at 1056) (Citations omitted.)

---

1. The relevant instructions to the jury are as follows:
   "All evidence relating to any admission or incriminatory statements claimed to have been made by a defendant outside of this court should be considered with caution and weighed with great care."

   As to the conspiracy element the instruction was that if the jury first found a conspiracy, it could consider statements by one conspirator against the others, but that otherwise

"Any admission or incriminatory statements made outside the court by one person may not be considered as evidence against any person that was not present and heard the statements made."
And, as to the unlawful prior acts, the instruction was:
"The defendants are not on trial for any act or conduct not alleged in the indictment. You are here to determine the guilt or innocence of the accused from the evidence in this case."

██ Nor was the court required, in the absence of a special request, to instruct the jury as to how to view such testimony. United States v. Johnson, *supra*, 415 F.2d at 655, and cases there cited.

There was considerable evidence reflecting upon the motives and credibility of the Browns, and counsel attacked their credibility in argument. We find no plain error.

### 7. *Confrontation on motion for new trial.*

██ The last contention made by the DeCarlos is that they were denied the right of confrontation when the Browns were not produced to testify at their motion for a new trial. The motion was supported by the oral testimony of two witnesses. The first witness stated that he had overheard an argument between Danny DeCarlo and Brown which concluded with Brown telling Danny that he would call the prosecutor and tell him that Danny knew nothing about the smuggling incident. This witness also said that Brown admitted to Danny that Danny had nothing to do with the smuggling venture. Also, he indicated that Brown told Danny that his (Brown's) wife was an alien and that he didn't want her to be deported. This witness exhibited a remarkable knowledge of Danny's version of the Mexican trip, and he was not able to identify Brown then from his own knowledge but rather relied on what someone else had told him to make the identification. This witness also was a member of a motorcycle club of which the DeCarlos were members.

A second witness said he overheard the same argument. This witness admitted that some of what he knew was not the result of overhearing the argument but was knowledge acquired since the time of the argument. He also admitted that he was a member of the same motorcycle club.

The testimony of these two witnesses is so incredible that we, like the trial judge, cannot give it much weight.

The DeCarlos bring the right to confrontation into this factual setting by looking to the fact that their newly discovered evidence supporting the new trial motion was evidence which impeached the Browns and asserting from that that the Browns should have been present to be cross-examined as to the new impeaching evidence at the hearing on their motion. But, as the trial court pointed out, the impeaching evidence related to issues and contentions that were before the jury at the trial. There is also a serious question as to whether the evidence was newly discovered.

The job of counsel for the DeCarlos at the time of the motion was to cast such doubt on the Browns' trial testimony that the trial judge would order a new trial. The testimony of the two new witnesses standing alone did not do this. If the DeCarlos wanted to have the Browns available to give testimony at the hearing, they should have subpoenaed them; they did not. At the hearing, there was no suggestion by their counsel that he wanted to have the Browns there. On the contrary, government counsel said that he wished to have the Browns there, and expected to have them there to testify. There was a recess during which he and one of their counsel attempted, unsuccessfully, to reach the Browns. Government counsel then submitted the matter, and there was no objection to their absence. The present contention is an after-thought, and without merit.

Affirmed.