**Earl WILLIAMS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16943.**

United States Court of Appeals Eighth Circuit.

Feb. 20, 1964.

Edwin L. Zohner, St. Louis, Mo., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., D. Jeff Lance, U. S. Atty., St. Louis, Mo., for appellee.

Before JOHNSEN Chief Judge, and VAN OOSTERHOUT and MATTHES, Circuit Judges.

JOHNSEN, Chief Judge.

Appellant was convicted on a jury trial (a) of violating 21 U.S.C. § 174, in receiving and concealing a quantity of heroin knowing it to have been imported into the United States contrary to law, and (b) of violating 26 U.S.C. § 4724(b), in unlawfully carrying a quantity of heroin and cocaine from Chicago, Illinois, to St. Louis, Missouri.

Two previous narcotic convictions existed against appellant, one for illegal possession, and the other for illegal sale. The selling violation had been engaged in after appellant's completion of his sentence on the possession offense. The present offenses were committed while he was out on conditional release under 18 U.S.C. § 4164 from the sale sentence.

An information setting forth the two prior convictions was filed under 26 U.S.C. § 7237(a), and the allegations thereof were admitted. The Court accordingly imposed a sentence of 20 years on each of the present convictions, with the sentences being made to run concurrently.

Appellant had been represented by employed counsel on his trial. He requested the appointment of counsel for appeal purposes, and Mr. Edwin L. Zohner, of St. Louis, Missouri, was appointed by us to represent him here. Mr. Zohner is entitled to commendation from both appellant and the Court for the capable and dedicated manner in which he has

performed the task and responsibility imposed upon him.

Error is claimed in the court's denial of appellant's motion for a directed verdict of acquittal; in the court's giving of certain instructions; and in the court's denial of an instruction requested by appellant.

## I.

The court cannot be said to have erred in denying the motion for a directed verdict. The Government's evidence (none was offered by appellant) was of competency and sufficiency such as to make the question of reasonable doubt purely a matter for the jury. There was not such facial unsubstantiality in crucial testimony or such inherent untrustworthiness as to credibility of crucial witness as to require reasonable doubt to be recognized as a matter of law.

The Government's crucial witness was a Miss Walker, who was an admitted narcotic addict. She was arrested with appellant at the St. Louis airport, after they had returned from a few-hours trip to Chicago, about 12:40 a. m., on June 16, 1961. Search was made of each of them—appellant in the airport police room, and Miss Walker in the first-aid room by a matron. A package containing over 22 grams of heroin and another containing over 4 grams of cocaine were found in the bosom of Miss Walker's dress, wrapped in a men's handkerchief. No narcotics were found on appellant.

Miss Walker immediately declared that the handkerchiefed parcel had been thrust into the bosom of her dress by appellant in the concourse of the St. Louis airport, after they had heard footsteps behind them and appellant had turned his head to see whether they were being followed. She said that the Chicago trip came about as a result of her having gone to appellant's home about five o'clock on the evening of June 15 to buy some narcotics for herself, with appellant stating that he was "almost out", and with him suggesting that she accompany him to Chicago. She assented, and he made plane reservations for them by telephone, obtaining seats on an 8:15 p. m. American Airlines flight. He drove to the airport in a white Cadillac convertible car, which he left in the parking area at the terminal. They went to the ticket counter; appellant picked up and paid for two tickets to Chicago, which had been reserved by him in the name of Mr. and Mrs. Johnson; and they went on to the boarding area.

When they arrived in Chicago, appellant purchased tickets back to St. Louis on a Delta Airlines flight, and then left Miss Walker in the airport terminal. He returned about an hour and a half later, and they boarded the Delta plane, which landed in St. Louis about 12:35 a. m. At the time that appellant had rejoined Miss Walker in the Chicago terminal, she inquired of him "did he get together", and "he said yes". In their arguments to the jury, both appellant's counsel and Government counsel recognized this as having reference to whether appellant had succeeded in getting any narotics.

The arrests came about from the American Airlines ticket agent having telephoned the St. Louis police, after appellant and Miss Walker had left his counter and proceeded toward the boarding area. The police department and the federal narcotic agents apparently regarded appellant as being again engaged in narcotic activity, notwithstanding that he was out on conditional release. They had left a photograph of appellant at the ticket counters of the various airlines serving Chicago, with a request that a lookout be kept for him and communication be made with them. The ticket agent had recognized appellant from the photograph.

When the police department received the telephone call on the evening of June 15, a number of policemen and federal narcotic agents went to the airport; looked for and spotted the white Cadillac convertible car in the parking lot, which they knew appellant had been driving; and set up surveillance of the planes thereafter arriving from Chicago. They saw appellant get off the Delta plane, accompanied by Miss Walker, and

kept the couple under observation while they were coming into the terminal. As appellant and Miss Walker proceeded in the concourse toward the escalator, some of the police officers and narcotic agents commenced to move up and close in behind them. Two of the narcotic agents saw appellant glance backward and suddenly extend his arm out in front of Miss Walker, but they were not able to tell from their view whether he had anything in his hand or put anything into the bosom of Miss Walker's dress.

Miss Walker testified that the dress which she was wearing at the time was one with a low, square-cut front. Appellant's counsel requested that the dress be produced, and this was done, so that the jury had the advantage of any discredit or corroboration which the dress was capable of lending to her story. Thus, in the attempt of appellant's counsel to induce belief by argument that it was Miss Walker and not appellant who was the possessor and carrier of the narcotics, the style of the dress and the size of the narcotic parcel could have been factors of consideration on the likelihood of whether a general bosom-carrying from Chicago of such a quantity of narcotics by her had occurred, as against her story that the handkerchiefed parcel had been suddenly thrust into the top of her dress by appellant at the St. Louis airport.

The effect of the argument which is made is that the evidence, particularly as to whether appellant had momentarily thrust the narcotics into the bosom of Miss Walker's dress, was so unsubstantial on its face and also so inherently untrustworthy as to credibility, coming from Miss Walker as an admitted accomplice, that it required reasonable doubt as to appellant's possession and transportation to be recognized as a matter of law. As we have indicated, we are unable to agree with this argument.

■ Miss Walker could be regarded as an accomplice in the commission of the offenses involved; she was a user of narcotics; she had a previous felony conviction for narcotic possession; and apparently the Government chose not to prosecute her in the present situation. These were matters which might influence her testimony. They would not, however, of themselves make her testimony so legally unsubstantial or her credibility as a witness so legally infirm as to require reasonable doubt to be recognized as a matter of law. They were merely factors on which appellant would be entitled to cautionary instructions in the jury's consideration of her possible credibility and the weight which it would have the right to accord to her testimony—and such instructions were fully given.

■ An accomplice is, of course, not disqualified as a witness in federal criminal trials. Nor is his testimony by rule of law of such unsubstantiality or such infirmity on interest or character as to be insufficient as a basis to convict without corroboration. A conviction can properly rest on the uncorroborated testimony of an accomplice if it is not otherwise incredible or unsubstantial on its face—which it was not here. Esters v. United States, 8 Cir., 260 F.2d 393; Azure v. United States, 8 Cir., 248 F.2d 335; Haakinson v. United States, 8 Cir., 238 F.2d 775; Nilva v. United States, 8 Cir., 212 F.2d 115; Kempe v. United States, 8 Cir., 151 F.2d 680; Brickey v. United States, 8 Cir., 123 F.2d 341.

While appellant's argument has been on the theory that Miss Walker's testimony was without any corroboration, and while we have declared that her testimony was capable without corroboration of supporting the conviction against appellant, the fact is that the other evidence adduced by the Government contained probative factors from which the jury rationally could find corroboration as to a number of the material aspects of her testimony.

The presence of appellant's automobile at the airport, as testified to by the narcotic agents, and the acts of appellant in purchasing and picking up the Chicago tickets, with his use of a fictitious name,

as testified to by the American Airlines ticket agent, could lend circumstantial corroboration and persuasion as to the hasty Chicago mission and the role of appellant as principal and not travelling companion therein.

Also, the observation by the narcotic agents of appellant's turning his head and suddenly reaching his arm toward the front of Miss Walker's dress would be capable, as natural reaction of a narcotic carrier, of lending some persuasion to her story that he had thrust the handkerchiefed parcel into the front of her dress at that time. In the same way, the style of the dress, as related to whether such a thrust was readily possible; the size of the parcel, as related to whether bosom-carrying of such a quantity of narcotics was more rationally likely to be a matter of sudden resort than of general means; and the fact that the two distinct packages of narcotics were parceled together in a men's handkerchief, instead of being separated and distributed in the front of the dress, could also add factors of persuasion as to the truth of Miss Walker's testimony.

■ It should not be necessary to say more as to the competency and sufficiency of the evidence to go to the jury on appellant's guilt.

## II.

In the thorough job done by him, appointed counsel has combed the court's charge and challenges a number of the aspects of the instructions. These are primarily matters which are asserted to be capable of confusing or misleading, and as to which it is argued that there should have been clarification or enlargement.

The claimed defects had not been made the subject of objection or exception at the trial, so that under the provisions of Rule 30, Fed.Rules of Crim.Proc. 18 U.S.C.A., appellant is procedurally without right to make assignment of them as error. Nor are they of seeming substance or consequence such as should discretionarily prompt us to notice and consider them, under the provisions of Rule

52(b), as "plain errors or defects affecting substantial rights".

While we thus are entitled not to engage in discussion of them, we shall, in demonstration that nothing is involved affecting substantial right, make brief reference to some of them.

## III.

■ It is contended that the court erred in instructing that, as to the charge of unlawfully receiving and concealing narcotics, appellant could be found guilty on constructive possession. The argument made is that on the Government's theory and evidence the issue was simply one of actual possession as between Miss Walker and appellant, and that to inject the matter of constructive possession could therefore only serve to confuse and mislead the jury.

The instruction involved was as follows: "The possession contemplated by the statute * * * need not be personal and exclusive. It need not be immediate. It is sufficient if the evidence shows the defendant to have had possession of the narcotic on June 16, 1961". It is to be noted that the term "constructive possession" was not used by the court (as it was in Erwing v. United States, 9 Cir., 296 F.2d 320, discussed below), although the elements mentioned are, of course, attributes of constructive possession.

Erwing v. United States, supra, is relied on by appellant. There, in viewing the evidence as presenting only a question of actual possession, the court held that it was prejudicial to give an instruction which told the jury that "possession, actual or constructive, alone would authorize conviction unless such possession is explained to the satisfaction of the jury."

The opinion declared that "if the evidence established that Erwing had had or had possession of the cocaine, such possession, under the theory of the Government, could have been actual possession only"; that "(u)pon no reasonable view of the evidence could it be said that such possession was constructive"; that, fur-

ther, in speaking of actual and constructive possession, "the instructions * * * do not define in any manner the meaning which the jury should ascribe to those terms or the implied distinction in meaning between them", but such meaning and distinction were "left entirely to the individual views of each juror"; and, finally, that "(t)he giving of the instruction that the statutory presumption should be applied if the cocaine were in the constructive possession of Erwing could only serve to confuse and mislead the jury in a case where the evidence left the guilt or innocence of Erwing in a twilight zone and wherein resort to the statutory presumption was crucial and indispensable to the conviction". Id., 296 F.2d at 322 and 323.

The court's statement in the situation before us, that the statute did not require personal, exclusive, or immediate possession, was without any legal relevance in view of the Government's theory, evidence and argument to the jury that appellant was the possessor of the narcotics on Miss Walker's testimony, and of the effort of appellant's counsel to persuade the jury that her story was not worthy of belief. This trial reality was carried also into the court's statement of the issue in its charge, that "The defendant denies the possession and transportation of the drugs and further contends that there is not credible evidence to support the prosecution's position".

We are convinced that under this clear focus it would hardly be possible for the jury not to understand that the practical problem before it was the credibility and weight of Miss Walker's story. The court's mere general statement that the statute did not require personal, exclusive and immediate possession was without context or relationship which could reasonably cause the mind of the jury to become confused on the simple question argued and driven home to it.

We do not believe that within trial realities this incidental statement would challenge jury attention or concern. But if it were to be supposed that the jury might undertake to see what application could be made thereof, it would have to conclude, we think, that there was none, since there was an immediately following direction that "(i)t is sufficient if the evidence shows the defendant to have had possession of the narcotic on June 16, 1961".

This would put the focus back on whether the evidence showed appellant to have had possession of the narcotics on June 16, 1961, and on the reality that the only basis on which it could be found such a showing did exist was in Miss Walker's story and by a crediting thereof—that the handkerchiefed parcel had been thrust by appellant into the bosom of her dress at the St. Louis airport.

The contention does not require further comment.

## IV.

■ It is contended that the instruction given on the presumption permitted by the second paragraph of 21 U.S.C. § 174 was inadequate and misleading. That paragraph provides:

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury".

The instruction incorporated this language practically verbatim and added a sentence, as follows: "By explaining that possession to your satisfaction * * * is meant that if the defendant had possession of the narcotic drug he will have to explain that it came to him legally, and without that explanation you would be authorized to find the defendant guilty as to [the charge of unlawfully receiving and concealing]". The added sentence related the presumption under the statute to the basis of unlawful possession charged in the indictment, namely, "knowing said narcotic drug had been imported into the United States of America contrary to law".

262

Summarized, the argument made is that, without clarification or enlargement, the instruction was capable of being construed to mean that the jury "*must* make a finding of guilty unless defendant presented evidence that the narcotic came to him legally", instead of that it merely was permitted or entitled to do so. We regard this as strained and artificial contention. The word "authorize" or "authorized" in the statute and the court's instruction is not one that is outside of ordinary vocabulary and general understanding. There exists no basis to argue that it might be regarded as meaning "must" or "required".

 A court may and generally should, where the law governing a case is expressed in a statute, employ the language of the statute in its instructions. Terminal R. Ass'n. of St. Louis v. Howell, 8 Cir., 165 F.2d 135, 140; Maynard v. United States, 94 U.S.App.D.C. 347, 215 F.2d 336, 339. Except where the statute is complex or not expressed in ordinary language—which is not the situation here—any amplification which a party may desire to have made must be the subject of a requested instruction by him.

Perez v. United States, 5 Cir., 297 F.2d 12, relied on by appellant, is not precedential here. There, it was held reversible error to refuse a requested instruction as to a statute (21 U.S.C. § 176a) on presumable knowledge of unlawful importation of marihuana from proved possession not satisfactorily explained, which instruction was to the effect that "explanation need not be made by the defendants themselves, but might be made by some other person or by inference or by the evidence adduced at the trial". Here, the defense was denial of possession and not attempted explanation, either personally or by other evidence. The rules set out in *Perez*, that "the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence", and "(t)he charge to which he is entitled, upon proper request, in such circum-

stances is one which precisely and specifically, rather than merely generally or abstractly, points to his theory of defense" (297 F.2d at 15 and 16), are purely academic in the present situation.

 The other contentions urged do not merit comment, except to add that as to the claim of error in the court's denial of an instruction requested by appellant, on presumption of innocence and reasonable doubt, these aspects were adequately and correctly covered in the instructions which the court gave.

Appellant has had a fair trial; there is no prejudicial error in the trial proceedings; his conviction and sentence are without any legal injustice.

Affirmed.