UNITED STATES of America, Appellee,

v.

Joseph EVANS, Appellant.

No. 82–1559.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1982.

Decided Jan. 6, 1983.

Certiorari Denied April 18, 1983. See 103 S.Ct. 1779.

Thomas E. Dittmeier, U.S. Atty., Edward L. Dowd, Jr., Asst. U.S. Atty., St. Louis, Mo., for appellee.

Wolff & Frankel, Leonard J. Frankel, Clayton, Mo., Stephen M. Komie, Chicago, Ill., for appellant.

Before BRIGHT and ARNOLD, Circuit Judges, and HUNTER,* Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

Defendant, Joseph Evans, was charged along with four others, Charles Cargile, Edward England, Richmond Miller, and Phillip Wright, with violating federal narcotics laws. Evans' four codefendants pled guilty to the charges and he stood trial alone.[1] A jury convicted him on counts one and four of the indictment; of conspiring to possess with intent to distribute approximately 500 pounds of marijuana in violation of Title 21, United States Code, §§ 841 and 846, and of possessing with intent to distribute approximately 127 pounds of marijuana in violation of Title 21, United States Code, § 841, respectively.

Evans appeals his conviction on two grounds: (1) that the jury lacked sufficient evidence upon which to convict him, and (2) that the district judge erred in allowing the government to present evidence of his prior criminal or wrongful acts. After considering the challenges of defendant and reviewing the record below, we affirm.

The nature of defendant's claims requires us to set out in some detail the evidence elicited at trial. The government based its case primarily on the testimony of Detective Zambo, an agent for the Drug Enforcement Administration (DEA), and Edward England one of the initial codefendants in the case. Detective Zambo testified concerning a marijuana transaction that he had participated in while acting in an undercover capacity and to conversations he had had with defendant after the latter's arrest. Edward England related defendant's involvement in the same transaction. Also

---

* The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Clyde S. Cahill, Sr., United States District Judge for the Eastern District of Missouri, presiding.

relied on, but to a lesser extent was the testimony of two additional DEA agents.[2]

An informant put Detective Zambo in contact with Richmond Miller in September of 1980. A meeting was arranged, and Detective Zambo and the informant met with Miller and Charles Cargile on September 23, 1980, at the Drury Inn in St. Louis. The meeting was held to discuss a marijuana transaction. No marijuana was sold at the meeting, although Cargile wanted to purchase a sample at that time to show "his people" coming in from Alabama and Illinois. They scheduled another meeting for the next day to further discuss the sale and to check the quality of the marijuana.

Cargile called Edward England at his home in Petersburg, Illinois during the evening of September 22, 1980. He told England that he had a deal in St. Louis where England could buy all the marijuana he wanted. England had been involved in a marijuana transaction with Cargile during the summer of the same year.

After hearing from Cargile, England talked to Phillip Wright who lived in the same town, and called defendant in Chicago to ask them if they were interested in buying some marijuana. Over the objection of defendant, England explained that he called Evans because Evans had also been involved in the marijuana deal between Cargile and England the previous summer.

Evans arrived at England's home during the afternoon of September 23, 1980, driving a beige Buick. England drove defendant's car to St. Louis and Wright followed in a car that England had him rent. The three checked into the same Drury Inn where Detective Zambo had met with Cargile and Miller, and where the latter two were staying. On arrival in St. Louis the three contacted Cargile about the deal. He told them that it was to occur the next day, September 24, 1980.

On the 24th Agent Zambo, the informant, Miller, and Cargile all met again to discuss the deal. Cargile indicated that he wanted to buy 500 pounds of marijuana, 300 pounds of which were for his buyers from out of town. The foursome then drove to a St. Louis airport to view the marijuana located in a hangar. Being satisfied with the quality of the marijuana the group returned to the motel so that Cargile could get his money and drivers together.

Upon their return to the motel Miller went to Cargile's room to get their money and Cargile went down the hall to England's room to confirm that the deal was on. When Cargile returned from the room he told Detective Zambo that his drivers were ready. During this same period England, Wright, and Evans sat in England's room and counted their money to make sure they had enough to purchase the 300 pounds of marijuana. They had approximately $80,000 between them; Evans had brought half of that amount.

Shortly thereafter Cargile, England, Wright, and Evans drove in Evans' Buick and Wright's rented car to a St. Louis mall where they were to rendezvous with Detective Zambo and the informant. England told Evans to remain at the mall and that he would pick him up after "it was loaded." Everyone else proceeded to the airport hangar.

At the hangar approximately 125 pounds of marijuana was loaded into the trunk of defendant's car and 150 pounds was loaded into the rented car. England counted out $82,000, $10,000 of which came from a paper sack taken from a brown shoulder bag. England and Wright then drove the two cars back to the mall to pick up defendant.

Other DEA agents kept defendant under surveillance while he waited at the mall. During that time Evans made a purchase, ate, and then waited at the curb for England and Wright to return.

Upon their return to the mall England gave Evans the keys to the Buick, told him that the car was ready to go, and then got in Wright's car for the trip home. Evans was not going through Petersburg on his return to Chicago.

**2.** A third DEA agent was called by defendant and testified concerning the surveillance of the defendant. Evans also called his employer as a character witness.

As the two cars exited the mall parking area agents stopped them, seized the marijuana in the trunks of both cars, and arrested the three occupants. Defendant was read his rights, and then taken to a St. Louis County police office. The others were taken to the local offices of the DEA. Among the items taken from Evans at the time of his arrest was approximately $700.

Evans was taken to the DEA offices the next morning, September 25, 1980, for processing. At the offices Detective Zambo again advised him of his rights and defendant indicated that he understood them. He did not, however, understand the charge against him. Detective Zambo explained that he was charged with conspiracy and with possession of marijuana with the intent to distribute it because he had more marijuana in his possession than deemed necessary for personal use.[3] Evans replied that "maybe we're just heavy smokers." Finally, Evans asked the detective if he would get his car back and identified the beige Buick as his car. When Detective Zambo said no that it was being seized as a vehicle used to transport marijuana, Evans said that he figured as much.

That same afternoon Detective Zambo again saw Evans at the Magistrate's Office for the setting of bond. Bond was set at $25,000. Detective Zambo overheard Evans comment that he didn't know how he was supposed to pay that amount when "they got all my money already."

Detective Zambo again spoke with Evans on September 26, 1980, when Evans was at the Marshal's Office claiming as his the clothes that were removed from the brown shoulder bag. He asked whether the shoulder bag would be returned to him. Again the detective told him that it was being seized because money used to purchase marijuana was taken from it. Evans said al-

right, signed the receipt for the property, and left.

England and defendant had at least three other contacts prior to defendant's trial. Sometime after their arrest in St. Louis but before Thanksgiving England drove to Chicago to see Evans. Evans was not home so England left him a note asking him to call. Evans did call shortly thereafter, but England was unable to recall any of the specifics of the conversation. England called Evans on Thanksgiving. Evans told England that he had been indicted on the St. Louis matter, and that England should check to see if he had been also. During the conversation Evans also told England that he could beat the charge if no one testified against him. Evans called England the day before his trial was to begin to persuade England not to testify against him. He told England that the most the judge would do to him if he did not testify would be to find him in contempt of court and place him in jail for the duration of the trial, but that the trial would last only a few days.

### Sufficient Evidence

Evans claims that the foregoing evidence was insufficient to establish his guilt beyond a reasonable doubt. He does not challenge the existence of a conspiracy to possess and distribute marijuana. Instead Evans challenges the proof of his knowing participation in the conspiracy. His main contention is that the testimony of Edward England was too biased to support his conviction. Furthermore, the rest of the evidence against him failed to establish more than his knowing and associating with certain conspirators, also insufficient to convict him of the conspiracy charge.[4]

■ To convict one of criminal conspiracy the government must show that the

---

**3.** According to Detective Zambo an ounce of marijuana contains the equivalent of fourteen marijuana cigarettes. The amount of marijuana taken from Evans' car trunk, 125 pounds, could produce approximately 28,000 marijuana cigarettes.

**4.** Evans further claims that his conviction for possession with intent to distribute marijuana

must also be dismissed on insufficiency of evidence grounds. He argues that when the evidence fails to support a conviction for conspiracy, as it does here, then a conviction on the underlying substantive count should be set aside. Our decision makes it unnecessary to rule on the merits of this argument.

individual entered an agreement with at least one other person, that the agreement had as its objective a violation of law, and that one of those in agreement committed an act in furtherance of the objective. *United States v. Schmaltz,* 562 F.2d 558, 559 (8th Cir.1977), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 315 (1978). The only element of a criminal conspiracy at issue on this appeal is the government's proof that Evans did join in the conspiracy.

The government in large measure relied on the testimony of Edward England in establishing Evans' involvement in the conspiracy. It was the only direct evidence linking defendant to the conspiracy. Evans challenges the heavy reliance on England's testimony. He asserts that England's desire to reduce his own three year sentence on the conspiracy and possession charges rendered his testimony unreliable and therefore insufficient to prove Evans' participation. We disagree.

■ The testimony of an accomplice is not per se unreliable. Both the Supreme Court, in *Caminetti v. United States,* 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 (1917); and this Circuit most recently in *United States v. Anderson,* 654 F.2d 1264, 1268 (8th Cir.1981), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1982), have recognized the propriety of using and relying upon the testimony of an accomplice or conspirator to prove another's connection to the conspiracy. The real issue here is not admissibility, but credibility. Credibility, i.e., the decision as to the appropriate weight to be accorded the testimony of a witness, rests with the jury.

Tainted witnesses have often supplied testimony crucial to the government's case. In a recent case both government witnesses admitted involvement with the defendants in a conspiracy to distribute a controlled substance. One of the witnesses was not indicted and the other pled guilty and received a thirty-three day sentence. Their testimony provided the only evidence against one of the defendants. *United States v. Anderson,* 654 F.2d at 1267, 1268. In another case the sole government witness was a large scale narcotics seller who had been recently paroled from a sentence on previous charges. For his testimony the government agreed not to further prosecute him for his past drug related crimes even though he was named in twenty-five counts of the present indictment. The government further agreed to relocate and sustain him. His testimony, and taped phone conversations between him and the defendant were the basis of the latter's conviction. *United States v. Losing,* 560 F.2d 906, 910–912 (8th Cir.), *cert. denied* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977). In both cases the juries were made aware of the witnesses' incentives to testify. We found sufficient evidence in each case to support the jury's decision to convict.

As in the cases above, the jury that convicted Evans was aware of those facts that would tend to diminish the credibility of England. The jury knew of England's history of illegal drug activity, his participation in the present conspiracy, his plea of guilty to and sentence of three years on charges in the same indictment, and his hope for a reduction in his sentence by cooperating with the government. The government had offered to inform the court of England's cooperation in testifying against Evans and had promised not to block a motion by England for a reduction of his sentence. Furthermore defendant does not claim and there is no indication in the record that he was prevented from bringing any other items to the jury's attention that would adversely reflect on England's credibility. We can find no error as a matter of law in the jury's consideration of the testimony of Edward England. As we noted in *Williams,* "these were matters which might influence . . . [a witness'] testimony. They would not, however, of themselves make . . . [his] testimony so legally unsubstantial or . . . [his] credibility as a witness so legally infirm as to require reasonable doubt to be recognized as a matter of law." *Williams v. United States,* 328 F.2d 256, 259 (8th Cir.), *cert. denied.* 377 U.S. 969, 84 S.Ct. 1651, 12 L.Ed.2d 739 (1964).

Evans contends that England's testimony was legally unsubstantial because it was uncorroborated. Contrary to the assertion of defendant a conspirator's testimony does not always require corroboration. As a matter of law the testimony of an accomplice is not "of such unsubstantiality or such infirmity on interest or character as to be insufficient as a basis to convict without corroboration. A conviction can properly rest on the uncorroborated testimony of an accomplice if it is not otherwise incredible or unsubstantial on its face." *Williams v. United States,* 328 F.2d at 259, and cases cited.[5] *See United States v. Anderson,* 654 F.2d at 1268. England's testimony was not incredible or unsubstantial on its face. He explained why he called Evans. The two of them had been involved in a marijuana purchase during the previous summer. His testimony also provided the jury with a plausible reason for Evans' presence in St. Louis. Furthermore his recitation of the transaction process certainly did not hint of the incredible. Reviewing the testimony of England we can not say as a matter of law that it was incredible. The jury could reasonably have believed that Evans conspired with England and others to purchase marijuana for distribution.

Our conclusion is bolstered by other corroborative evidence in the record. Evans was seen with England and Cargile at the mall by at least three testifying agents. The trunk of Evans' car was loaded with marijuana which was paid for at least in part by money taken from a shoulder bag belonging to Evans. The shoulder bag was also in the car when he was stopped. England returned Evans' car to him and Evans was driving in tandem with England and Wright when both cars were stopped and all three were arrested. When Detective Zambo explained the charge against Evans to him Evans only response was that "maybe we are just heavysmokers." Evans was also not surprised when informed that his car and shoulder bag were being confiscated because of their connection with the marijuana transaction. Finally Detective Zambo overheard Evans' comment that "I don't know how they expect me to make $25,000 bond. They got all my money already."

Evans argues that when the totality of the evidence is considered it proves nothing more than his association with some of the conspirators. He claims he was in St. Louis to vacation. He was not at any of the meetings to discuss the deal, nor was he at the hangar when the cars were loaded. Moreover, his name was never mentioned by any of the conspirators at any of these times to any of the agents. Furthermore, he argues that the DEA failed to trace any of the money used to purchase the marijuana to him. They did not run a fingerprint check on the money or its container nor did they check any of his bank records. He maintains that just because part of the money came from his shoulder bag does not mean that he put the money there. He also argues that if he had been involved in a $40,000 drug deal he would not have stayed behind at the mall, and he certainly would not have been as calm while he waited. Finally he maintains that his comment about not being able to afford bond because the officers already had his money referred to the $700 that he brought for his vacation and which was taken from him upon his arrest.

It is true that mere association with conspirators or knowledge of a conspiracy is not sufficient to convict one of conspiracy. *United States v. Scholle,* 553 F.2d 1109, 1118 (8th Cir.), *cert. denied,* 434

---

5. In *Williams* the crucial testimony against the defendant was provided by an accomplice. The accomplice and the defendant were arrested as they disembarked from a flight. A search of the two discovered heroin on the witness and nothing on the defendant. The accomplice, however, was not prosecuted, and instead testified against the defendant. The only corroboration of her testimony that the defendant had thrust the heroin package down the front of her dress as they proceeded through the airport was the testimony of an agent who said that he saw the defendant move his hand toward the testifying accomplice, but he could not see what was in the defendant's hand. Based on this testimony the defendant was convicted. *Williams v. United States,* 328 F.2d at 258.

U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977). It is also true, however, that " 'once the government has established the existence of a conspiracy, even slight evidence connecting a particular defendant to the conspiracy may be substantial and therefore sufficient proof of defendant's involvement in the scheme.' " *United States v. McCarty,* 611 F.2d 220, 223 (8th Cir.1979), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980), *citing, United States v. Cox,* 580 F.2d 317, 323 (8th Cir.1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979), *quoting, United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). The government need not dispel every possible theory of honest behavior to obtain a conviction but its evidence must be sufficient to convince a jury beyond a reasonable doubt of the defendant's guilt. *United States v. Nelson,* 603 F.2d 42, (8th Cir.1979); *United States v. Scholle,* 553 F.2d at 1119.

In reaching its decision to convict Evans the jury had before it not only the direct testimony of England and the DEA agents, but also the arguments and defenses of Evans. The jury chose to believe the case presented by the government: that Evans knowingly came to St. Louis to conspire to obtain and did obtain marijuana with the intent to distribute it. Having reviewed the evidence in a manner most favorable to the government, *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2912, 41 L.Ed.2d 590 (1974); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); and accepting as reasonable all inferences from the evidence that would tend to support the verdict below, *United States v. Littlefield,* 594 F.2d 682, 684 (8th Cir.1979), we find the evidence sufficient to support the decision of the jury.

### Prior Misconduct Testimony

In his other challenge Evans claims error in the admission of testimony as to his prior wrongful acts.[6] England testified over defendant's objection, that he and Evans had been involved with Cargile in a previous marijuana purchase during the summer of 1980. The court below allowed the testimony to explain why England called Evans concerning the marijuana purchase involved here. Defendant now raises several objections to the ruling. He argues that the testimony was irrelevant to the charges against him, that the court failed to determine whether the evidence was clear and convincing that he had participated in the prior transaction, and that the court failed to balance the probative and prejudicial values of the evidence. He concludes that a proper weighing of the values would lead to a finding of overwhelming prejudice and a refusal to admit the prior act testimony.

In previous decisions we have set out the prerequisites that must be met for the admission of evidence of prior criminal or wrongful acts. These requirements track the pertinent portions of the Federal Rules of Evidence, Rule 404(b) and 403.[7] A trial judge acts within his sound discretion in admitting evidence of prior wrongful acts when (1) the evidence is relevant to an issue in question other than that of the

---

**6.** The government also sought to introduce evidence of a drug deal involving England and Evans that occurred after the St. Louis trip. The court, on learning of the government's intent, refused to allow England to be questioned regarding the subsequent transaction. Although Evans raises the fact of the government's attempt to introduce the evidence there is no basis for finding error. The jury heard nothing pertaining to the later transaction since the entire discussion occurred before the bench and out of their hearing.

**7.** Rule 404(b) directs federal courts not to admit evidence of other crimes, wrongs, or acts for the purpose of proving the character of a defendant. Evidence of other crimes, wrongs, or acts may be admissible for other purposes; such as for proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" on the part of the defendant. Rule 403 requires consideration of several other factors before otherwise relevant evidence is admitted. Relevant evidence should be withheld from the jury if it would unfairly prejudice, confuse, or mislead the jury, unreasonably delay the trial, or merely be cumulative evidence, and one or all of these problems substantially outweighs the probative value of the evidence.

character of the defendant, (2) there is clear and convincing evidence that defendant committed the prior acts, and (3) the potential unfair prejudice of the evidence does not substantially outweigh its probative value. *United States v. Young,* 618 F.2d 1281, 1289 (8th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980); *United States v. Scholle,* 553 F.2d at 121. Broad discretion is afforded the trial judge in deciding whether to admit wrongful act evidence and his decision will not be overturned without a clear showing that the requirements have not been met. *United States v. Young,* 618 F.2d at 1289; *United States v. Jardan,* 552 F.2d 216, 219 (8th Cir.), *cert. denied,* 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977).

Evans first contends that England's testimony was not relevant to any issues in the case. The prior act testimony was elicited to explain why England called Evans in the first place about the marijuana deal. In *United States v. Scholle,* we allowed evidence of a similar nature in order to complete the story for the jury. A coconspirator turned government witness was allowed to testify regarding a prior drug transaction that he had participated in and that the defendant had financed. The testimony served to explain why the witness had again approached the defendant for money to finance the drug transaction at issue in the case. We ruled that the testimony not only completed the story, but was relevant to show the defendant's motive and his intent in giving the money to the witness. *United States v. Scholle,* 553 F.2d at 1121.

■■■ Evans maintained that he came to St. Louis to vacation, and that he did not know that his companions, England and Wright, were involved in a marijuana transaction. The testimony of England, similar to the testimony in *Scholle,* was relevant to show Evans' motive for driving to St. Louis and that he intended to participate in the conspiracy.[8] It also indicated

the marijuana was not in defendant's car by mistake. All of these are grounds for admitting wrongful act evidence. *See* Fed.R. Evid. 404(b). "In prosecutions for violation of narcotics laws, the defendant's complicity in other similar narcotics transactions may serve to establish intent or motive to commit the crime charged." *United States v. Lewis,* 423 F.2d 457, 459 (8th Cir.), *cert. denied,* 400 U.S. 905, 91 S.Ct. 146, 27 L.Ed.2d 142 (1970). The previous transaction that England and Evans were involved in is similar in many respects. Not only were both involved in each transaction, but Cargile also set up both transactions. Marijuana was purchased both times and in quantities sufficiently large to indicate an intent to distribute it.

Defendant next argues that the evidence of his participation in the summer marijuana purchase did not meet the "clear and convincing" standard. His argument is twofold: (1) that the court failed to determine whether his involvement was clearly and convincingly proved, and (2) that the uncorroborated evidence of England is not clear and convincing.

■■■ While it is true that the court did not make an explicit ruling on whether the evidence of the prior act was clear and convincing this does not end our inquiry. To require an explicit recitation of a "clear and convincing" finding would be a historical step backward to a time when form ruled over substance. Defendant objected to the evidence and voiced his reasons for the objection at bar. We assume that the court is well aware of the standards for admitting prior wrongful act evidence and found, albeit, implicitly that the standards had been met. Although an explicit ruling would simplify our review and is preferable, an implicit finding does not constitute reversible error. Compare *United States v. Trevino,* 565 F.2d 1317, 1319 (5th Cir.), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1613, 56 L.Ed.2d 63 (1978).

---

8. Evans argues that the court erred in allowing the government to introduce the prior act evidence in its case in chief. Contrary to Evans' assertion the government is entitled to put this evidence on in anticipation of a defense of lack

of intent. *United States v. Jardan,* 552 F.2d at 219. The government's anticipation certainly did not unduly prejudice Evans since he did deny any knowledge of or intent to participate in the conspiracy.

Moreover, contrary to the second prong of defendant's argument the testimony of England did not require corroboration to satisfy the clear and convincing test. For example in *Jardan* and in *Lewis* we upheld the admission of testimony of a government informant regarding his previous drug transactions with the defendant. In each case no other evidence of the defendant's previous drug activity was offered to corroborate the testimony of the government informer. *United States v. Jardan,* 552 F.2d at 218; *United States v. Lewis,* 423 F.2d at 458.[9]

England's testimony did not necessitate corroboration to go to the jury. His testimony was unambiguous and specific. He testified to when the transaction occurred, what substance was involved, how much of it was involved, and who participated in the transaction. The specificity certainly opened his testimony to rebuttal or challenge if incorrect. The trial court did not err in assuming that the testimony of England satisfied the clear and convincing standard.

Evans finally contends that the prejudicial nature of the evidence substantially outweighed its probative value. He reasons that the evidence lacked probative value because it was not clear and convincing and was highly prejudicial because it tended to confuse the jury. He further argues that the court erred in failing to make a determination of value until the redirect examination of England.

We begin with the last argument first. It is clear from the record that the court performed the necessary balancing of probativeness and prejudice. Evans objected to the prior act testimony when the government first sought to introduce it on direct examination. He called on the court to balance the probative value and prejudicial impact of the proposed testimony. The court listened to Evans' objection and his call for balancing before it ruled in favor of admitting the evidence. The court reasoned that in light of Evans' proposed impeachment of England that the government was allowed to show why England has called Evans about the St. Louis transaction. Also in order to clarify the record the court during redirect again weighed "the pros and cons of admitting this type of testimony." The court's failure to use "magic" words in reaching its decision does not constitute reversible error. *United States v. Sangrey,* 586 F.2d 1312, 1315 (9th Cir.1978).

Finally, the record does not support defendant's contention that the prejudicial nature of the evidence substantially outweighed its probative value. The record fails to indicate any confusion on the part of the jury, and any confusion that may have resulted was certainly minimal. Also the evidence on its face was not so inflammatory as to divert the jury's attention from the issues of the case nor was it dwelt upon by government counsel. Furthermore, we have already rejected defendant's other premise that the testimony lacked probative value because it was not clear and convincing. The probative value of England's testimony was not substantially outweighed by any undue prejudice.

The testimony of Edward England satisfied the requirements for admitting prior criminal or wrongful act evidence. Consequently, the trial judge did not abuse his discretion in admitting the testimony.

Affirmed.

9. Other circuits have also accepted the uncorroborated testimony of a witness as sufficient to satisfy the clear and convincing requirement. In *United States v. Trevino,* the Fifth Circuit ruled that the testimony of an accomplice did not have to be corroborated to satisfy the requirement. The court reasoned that if such uncorroborated testimony was sufficient to support a conviction then it should also be sufficient to satisfy the lesser, clear and convincing standard. *United States v. Trevino,* 565 F.2d at 1319. Likewise, the Seventh Circuit has stated that the "[d]irect testimony of the defendant's participation in the prior schemes is sufficient to meet the clear and convincing standard .... The absence of corroboration alone will not render the testimony insufficient." *United States v. O'Brien,* 618 F.2d 1234, 1239 (7th Cir.1980), *cert. denied,* 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1981), (citations omitted).