UNITED STATES of America, Appellee,

v.

**Lawrence A. KOESSEL, Appellant.**

**No. 82–2260.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1983.

Decided May 12, 1983.

---

Kevin F. O'Malley, Asst. U.S. Atty., Dept. of Justice, Washington, D.C., Thomas E. Dittmeier, U.S. Atty., Robert T. Haar, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Susan M. Hais, Clayton, Mo., for appellant.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Lawrence A. Koessel appeals from a final judgment entered in the District Court for the Eastern District of Missouri[1] upon a jury verdict finding him guilty of possession with intent to distribute 26.09 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Koessel was also charged with distribution of 1.93 grams of cocaine but was acquitted. For reversal appellant argues that his ar-

---

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

rest was not supported by probable cause, that the district court erred in failing to suppress the fruits of the arrest and items seized pursuant to an allegedly invalid search warrant, and that the court committed various evidentiary errors. For the reasons discussed below, we affirm.

The evidence viewed in the light most favorable to the government reveals the following. Ronald Coyne, who had previously been convicted of drug offenses, was a government informant. In March 1982, Coyne had a chance encounter with appellant, with whom he had had previous drug dealings. Coyne owed appellant money from one of the previous deals. Appellant asked Coyne if he could repay his debt. When Coyne stated he did not have the money, appellant and Coyne agreed that Coyne could sell cocaine for appellant to pay off the debt. Later, Coyne met appellant at appellant's apartment to discuss details. Because appellant did not want to deal directly with the buyer, Coyne and appellant agreed that Coyne would find a buyer and that appellant would give Coyne a sample of cocaine to take to the buyer. If the sample met with the buyer's approval, Coyne would take the buyer's money back to appellant who would give Coyne the remainder of the cocaine. Coyne informed Detective Zambo, his supervisor at the Drug Enforcement Administration (DEA), of appellant's proposal to sell cocaine and Zambo agreed to "purchase" cocaine.

On April 6, the day of the "sale," Coyne telephoned appellant from the DEA office. The conversation was taped. Before Coyne left the DEA office, Zambo searched him. Coyne brought with him to the DEA office an empty vial in which to put the sample of cocaine. Zambo arranged to meet Coyne at a restaurant near appellant's apartment complex. Under the surveillance of DEA agents Wagner and Wells, Coyne drove to appellant's apartment and went inside. Appellant had approximately an ounce of cocaine[2] in a glassine bag. He spooned out a small quantity of the powder into Coyne's vial. After the "purchaser" inspected the

sample, Coyne was to meet appellant at a nearby laundromat to exchange the purchaser's money for the remainder of the cocaine.

Agents Wagner and Wells continued surveillance on appellant after Coyne and appellant left the apartment. The agents followed appellant in his automobile to the laundromat. Coyne met Zambo at the restaurant and gave him the vial. Zambo field-tested the powder, which proved positive for cocaine and was later found to contain 1.93 grams of cocaine. Zambo then telephoned the DEA agents to arrest appellant. At that time appellant was sitting in his parked automobile near the laundromat. As the DEA agents, who were in separate unmarked automobiles, pulled in on appellant, agent Wagner saw appellant open the passenger door and throw down a packet. Agent Wagner retrieved the packet, which was later found to contain 26.09 grams of cocaine. The agents then arrested appellant.

On April 7, Detective Zambo applied for and obtained a search warrant for appellant's apartment. In the search warrant affidavit Zambo stated that Ronald Coyne had been a past reliable confidential informant, that Coyne had given information that led to numerous drug convictions in Missouri and Florida, that on April 6 Coyne had observed appellant with an ounce of cocaine, that Coyne's observations had been verified by DEA agents and led to appellant's arrest, and that Coyne had observed quantities of cocaine, procaine, and caffeine and a triple beam scale at appellant's apartment. The magistrate issued a search warrant for cocaine, procaine, caffeine, and the scale. On execution of the warrant, Zambo discovered and seized numerous other items of drug paraphernalia not mentioned in the warrant.

Appellant filed a pretrial motion to suppress the 1.93 grams of cocaine in the vial, the 26.09 grams of cocaine in the packet, and the items seized pursuant to the warrant. At the motion to suppress hear-

---

**2.** An ounce of cocaine is 28 grams.

ing, the government took the position that the vial and packet of cocaine had not been "seized" in the fourth amendment sense because appellant had no legitimate expectation of privacy in the cocaine. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The government reasoned that appellant could have no legitimate expectation of privacy when he gave the sample of cocaine to Coyne and when he threw the packet of cocaine from his car. We agree.

In *United States v. Davis,* 617 F.2d 677 (D.C.Cir.1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980), the defendant also gave cocaine to another party, co-defendant Gelestino, who was to sell the drug. The court stated that although the defendant did not " 'expect' publication of his interest in the cocaine . . . he not only expected but also intended for Gelestino, his 'salesman,' to show it to potential buyers and, upon payment, to relinquish it to them." *Id.* at 690 (footnote omitted). As was stated by the court in *Davis,* and is equally applicable here, "[h]aving no dominion over who would use it, buy it, or even see it, [defendant] cannot argue that he continued to have an expectation of privacy in the cocaine." *Id.* In *United States v. Hollman,* 541 F.2d 196 (8th Cir.1976), this court held that when a defendant threw a packet of drugs from a car as the police approached him he had abandoned the evidence and therefore had no protectable fourth amendment interests in the drugs. *Id.* at 199 n. 8.

Our finding that appellant had abandoned the packet of cocaine, however, does not end our inquiry. To fall outside of fourth amendment protection, a defendant's abandonment of evidence cannot be the product of unlawful police conduct. *United States v. Beck,* 602 F.2d 726, 729 (5th Cir. 1979). For the reasons discussed below, we find that appellant's warrantless arrest was amply supported by probable cause.

 Hearsay information provided by a confidential informant may supply probable cause for a valid, warrantless arrest, so long as the requirements of *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), are met. *United States v. Boyd,* 696 F.2d 63, 65 (8th Cir.1982). *Spinelli* and *Aguilar* require that an affidavit underlying a search warrant provide sufficient detail so that a magistrate may make an independent determination that the informant is reliable and that the particular tip is worthy of credit. *Id.* "The tipster should state how he received his information—whether he observed the defendant engaging in criminal activity or whether he participated in the crime." *Id.* Although the Supreme Court developed the *Spinelli-Aguilar* requirements in the context of search warrant cases, the Court indicated that the same analysis is applicable to warrantless arrests. *Spinelli v. United States,* 393 U.S. at 417 n. 5, 89 S.Ct. at 589 n. 5. Here the *Spinelli-Aguilar* test was met. Coyne had proved to be a reliable informant in the past; his involvement led to numerous drug convictions. Coyne had acquired his information concerning appellant through personal observation and participation in the scheme to "sell" the cocaine.

 Likewise, the affidavit underlying the search was sufficiently detailed as to Coyne's reliability and the source of his knowledge to meet the *Spinelli-Aguilar* test. In fact, the district court stated the affidavit was "exemplary." Therefore, the items seized pursuant to the search warrant [3] were admissible, even though not every item seized was specifically mentioned in the warrant. Items that come within "plain view" during an otherwise authorized search may be seized if the initial intrusion was lawful, the discovery was inadvertent, and the incriminating nature of the items immediately apparent. *United States v. Criswell,* 696 F.2d 636, 640 (8th Cir.1983). Such is the case here.

---

**3.** Appellant makes several other challenges to the legal sufficiency of the warrant, all of

which we find to be without merit.

■ Appellant also challenges several evidentiary rulings. He claims reversible error in the admission of testimony of prior bad acts. On direct examination appellant testified to a 1981 conviction for possession of cocaine. On cross-examination of appellant the government elicited details of the conviction, including that during a 1980 search of his apartment drug paraphernalia was seized. In addition, Coyne testified to appellant's prior drug dealings. The government argues that the details of the prior conviction and search and appellant's relationship to Coyne were admissible under Fed.R.Evid. 404(b) to show a similarity of operation and to rebut appellant's theory that Coyne "framed" him and "planted" the drug paraphernalia. We agree. " 'In prosecutions for violations of narcotics law, the defendant's complicity in other similar narcotics transactions may serve to establish intent or motive to commit the crime charged.' " *United States v. Evans,* 697 F.2d 240, 248 (8th Cir.1983) (citation omitted). However, evidence of prior bad acts is only admissible when

> (1) the evidence is relevant to an issue in question other than that of the character of the defendant, (2) there is clear and convincing evidence that defendant committed the prior acts, and (3) the potential unfair prejudice of the evidence does not substantially outweigh its probative value. Broad discretion is afforded the trial judge in deciding whether to admit wrongful act evidence and his decision will not be overturned without a clear showing that the requirements have not been met.

*Id.* at 247–48 (citations omitted). Here we find the requirements of Rule 404(b) have been met and therefore the evidence was admissible.[4]

■ Appellant also challenges the trial court's decision to limit his character testimony to three witnesses. It has long been the law that the trial court has discretion to limit the number of character witnesses.

*Michelson v. United States,* 335 U.S. 469, 480, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948). In addition, we find no error in the trial court's refusal to allow appellant's probation officer to testify to his good behavior on parole. Character testimony is limited to the reputation of a defendant, not to specific instances of behavior. *Id.* at 477, 69 S.Ct. at 219. Further, we find no error in the trial court's refusal to allow defense counsel to elicit character testimony concerning Ronald Coyne from a witness who testified he had only met Coyne on one occasion.

■ Last, appellant argues that the trial court erred in granting the jury's request during deliberations to a replaying of the tape of the April 6 telephone conversation between Coyne and appellant. The tape had been played during the trial. Appellant argues that the replaying of the tape unduly emphasized a piece of evidence. However, it is within the trial court's discretion to replay a tape at the jury's request. *United States v. Zepeda-Santana,* 569 F.2d 1386, 1391 (5th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3098, 57 L.Ed.2d 1138 (1978). Furthermore, before replaying the tape, the trial court cautioned the jury that the tape of the conversation must be considered in the context of the entire evidence.

Accordingly, the judgment is affirmed.

4. As in *Evans,* the trial court did not make an explicit finding that the requirements had been met, but merely overruled the defendant's objection on the ground of prejudice. Although an "explicit ruling would simplify our review and is preferable, an implicit finding does not constitute reversible error." *United States v. Evans,* 697 F.2d 240, 248 (8th Cir.1983).