UNITED STATES of America, Appellee,

v.

Dennis Michael GILMORE, Appellant.

No. 83–1898.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1983.

Decided March 30, 1984.

Rehearing Denied April 30, 1984.

Thomas E. Dittmeier, U.S. Atty., Debra E. Herzog, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Law Offices of J. Martin Hadican by J. Martin Hadican and Joyce Yulkey MacDonald, Clayton, Mo., for appellant.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HUNTER,[*] Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

Dennis Michael Gilmore appeals from his conviction for knowingly and intentionally distributing approximately 54 grams of cocaine, a Schedule II narcotic drug controlled substance in violation of 21 U.S.C. 841(a)(1). Gilmore contends that the district court erred in four respects: (1) in allowing in evidence testimony of prior drug dealings between a government witness and the defendant; (2) in failing to instruct the jury on defendant's theory of defense; (3) in failing to instruct the jury on the credibility of witnesses with a bias and prejudice and/or hostility toward defendant; and (4) in highlighting certain evidence at the expense of other evidence in the trial. For the reasons set forth below we affirm the judgment of the district court.

The evidence adduced during the trial established that on November 16, 1982, John Perdue was arrested for distribution of heroin by Robert M. Zambo, Jr., a St. Louis police officer who was assigned to the Drug Enforcement Administration. Thereafter, Perdue agreed to cooperate with the Drug Enforcement Administration by assisting in making cases against other persons. In return for his cooperation, Zambo would make that cooperation known to the United States Attorney and to any judge before whom Perdue might subsequently appear.

After he had begun cooperating with the Drug Enforcement Administration, Perdue told Zambo that he had purchased cocaine from Gilmore prior to his arrest and agreed to arrange such a purchase from Gilmore. Perdue telephoned Gilmore in an attempt to arrange a purchase of cocaine. This conversation was monitored by Zambo, but the conversation was not tape recorded. Perdue testified that Gilmore said he would get in touch with Perdue by telephone the next day.

Perdue testified that six telephone calls between himself and Gilmore occurred during the next seven days, the substance of which was that Gilmore would telephone him at 3:00 p.m. on November 30, 1983, to arrange the cocaine sale. None of the six telephone calls was recorded or overheard by a Government Agent. Perdue did advise Zambo of the calls.

Pursuant to a telephone discussion with Perdue, Zambo went to Perdue's residence at about 2:30 p.m., on November 30, 1982. When Perdue did not receive a telephone call from Gilmore at 3:00 p.m., Perdue telephoned Gilmore at his place of employment and left a message for Gilmore to telephone him. A few minutes later, Gilmore telephoned Perdue and they agreed to meet on the parking lot of O'Connell's restaurant. This telephone call was recorded and monitored by Zambo. The recording of the call was admitted into evidence as Government's Exhibit 1 and was played for the jury.

Perdue drove alone in his car to O'Connell's restaurant and Zambo followed in his car. After arriving at O'Connell's, Perdue parked his car and entered Gilmore's car. He and Gilmore exchanged money and cocaine and Gilmore told him he perhaps had one more ounce that Perdue might be able

---

[*] Elmo B. Hunter, Senior District Judge, Western District of Missouri, sitting by designation.

to obtain in the near future. Perdue then exited Gilmore's car and Gilmore drove away. Perdue walked over to Zambo's car and gave Zambo a clear plastic sandwich bag containing a substance later found to be cocaine. Zambo had also parked on O'Connell's parking lot. From his position, he could not see what had transpired in Gilmore's car. He did, however, monitor and record the conversation which occurred therein between Gilmore and Perdue and that recording was introduced in evidence as Government's Exhibit 2 and played for the Jury.

(1) Appellant claims that the trial court erred in allowing Perdue and Zambo to testify concerning prior drug dealings between Perdue and Gilmore. The challenged testimony of Perdue in context, was as follows:

Q. During that time period, did you have occasion to know a man by the name of Dennis Michael Gilmore?

A. Yes, sir.

Q. Do you see the man in the courtroom here today known to you as Dennis Michael Gilmore.

A. Yes, sir, I do.

Q. Would you point him out and indicate the clothing he's wearing, please?

A. Gray suit, white shirt, table over here.

Mr. Poehling: May the record show he has indicated the defendant, your Honor.

The Court: How did you describe his clothing?

The Witness: White shirt, gray shirt.

Q. (By Mr. Poehling) Well, in order—since we have two gentlemen here, as you look at them, are you referring to the gentleman on the left or the gentleman on the right?

A. The gentleman on the right.

The Court: With or without a vest?

The Witness: With a vest.

The Court: Thank you very much.

Mr. Poehling: May the record indicate identification?

The Court: The record will indicate identification.

Q. (By Mr. Poehling) Did your relationship with Dennis Michael Gilmore involve cocaine?

A. Yes, sir, it did.

Q. Did you in fact have a series or a history of dealing in terms of—or buying, rather, buying cocaine from Dennis Michael Gilmore?

A. Yes, sir.

Mr. Hadican: One moment, your Honor, just one moment, please. I object to that line of questioning.

May we approach the bench, please. (Bench discussion, off the record, out of the hearing of jury.)

The Court: Objection overruled. Was there an answer to the question? (Answer read by reporter.)

Q. (By Mr. Poehling) Final Question: Approximately how many times had you engaged in transactions where you purchased cocaine from Dennis Michael Gilmore?

A. About five, perhaps six.

The contested testimony of Zambo reads as follows:

Q. Would you tell the ladies and gentlemen of the jury what a debriefing is?

A. Debriefing is sitting down with the individual obtaining all names of people that he knows are associated with drugs, people who he has dealt with, how long he has known them and what type of drug they are distributing.

Q. Was that done with Mr. Perdue?

A. Yes, sir, it was.

Q. Was that done by yourself and other officers?

A. Yes, sir, it was.

Q. During the course of the debriefing, did the name Dennis Michael Gilmore come up?

A. It did.

Q. And was that brought—who brought that name up?

A. Mr. Perdue?

Q. And did he relate some information to you concerning prior transactions he may or may not have had with the defendant?

Mr. Hadican: Your Honor, we want to renew the previous objection.

The Court: Will be overruled

A. Yes, sir, he did.

Q. After you received that information, what happened relative to the defendant?

A. We decided to have Mr. Perdue make a phone call or be involved in a phone call with Mr. Gilmore and attempt to obtain a quantity of cocaine from Mr. Gilmore.

■ The government is precluded from introducing evidence of a defendant's prior criminal acts to establish his character, but may offer such evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b). A trial judge acts within his sound discretion in admitting evidence of prior wrongful acts when (1) the evidence is relevant to an issue in question other than that of the character of the defendant, (2) there is clear and convincing evidence that the defendant committed the prior acts, and (3) the potential unfair prejudice of the evidence does not substantially outweigh its probative value. *United States v. Evans*, 697 F.2d 240, 247–48 (8th Cir.1983). Broad discretion is afforded the trial judge in deciding whether to admit wrongful act evidence and his decision will not be overturned absent a clear showing that the requirements have not been met. *Id.* at 248.

■ In this case the bench discussion that took place following objection [1] by the defense was off the record, and there was no explicit ruling following the unrecorded discussion. Nonetheless, we will assume that the court was well aware of the standards for admitting prior wrongful act evidence. Although an explicit ruling is preferable, a ruling of admissibility under these circumstances carries with it an implicit ruling that the standards have been met. *United States v. Evans*, 697 F.2d at 248.

■ Appellant first claims that there was no material issue raised which necessitated the introduction of the prior drug dealings evidence. By pleading not guilty, the defendant put the government to its proof on all elements of the charged crime, including intent, knowledge, and identity. The challenged testimony supports the government's position on each of these issues. The government is not required to wait until the defendant posits a particular defense asserting a lack of one of the elements of the charged crime, but may prove up their case in anticipation of such a defense. *United States v. Jardan*, 552 F.2d 216, 219 (8th Cir.1977).

■ Gilmore argues that the uncorroborated testimony of an informer who had decided to cooperate with the government on the representation that the United States Attorney would take such cooperation into account did not constitute clear and convincing evidence of other crimes. It is well established that the lack of corroboration of direct testimony of an informant or accomplice will not render the testimony insufficient on this point. *See United States v. Evans*, 697 F.2d at 249 and cases cited therein.

■ The appellant argues that the final requirement relative to the admission of prior wrongs evidence, that the probative value of the evidence outweigh its prejudicial effect, was not met. Appellant contends that the disputed evidence was very prejudicial because the wrongful acts brought out were the very same kind of

---

**1.** The record indicates that defense counsel failed to state his specific objection as required by Fed.R.Evid. 103(a)(1). We assume, without deciding, that the ground of the objection was apparent from the context.

acts he was charged with in the indictment. While such evidence undoubtedly is prejudicial, and would rightfully be the subject of a limiting instruction if requested, it is also highly probative of elements of the crime such as knowledge and intent. *See id.* at 248. An explanation of the relationship between the witness and the defendant also supports the identification of the defendant by the witness and helps explain why the defendant originally was approached by the witness. *See id.* The trial judge did not err in admitting the evidence.

■ Appellant claims that the failure of the court to give an instruction limiting the evidence to its proper use was error in that the jury was allowed to conclude for itself that the evidence proved Gilmore acted in a similar manner with regard to the charged offense. Under Fed.R.Evid. 105, the burden of requesting such an instruction falls on the party who desires that the instruction be given. No such request was made. Appellant cannot complain at this late date that no instruction was given.

■ (2) Appellant next asserts that the trial judge erred in failing to read to the jury one of defendant's proposed instructions in its entirety. Gilmore's proffered instruction read:

The Defendant, Dennis Michael Gilmore, has pleaded "not guilty" to the charge contained in the Indictment. This plea puts in issue each of the two essential elements of the offenses as described in these Instructions, and imposes on the Government the burden of establishing each of these elements by proof beyond a reasonable doubt.

It is the position of the Defendant, Dennis Michael Gilmore, that on November 30, 1982, he did not distribute cocaine.

The Court gave the first paragraph of the instruction, but refused to give the second.

It is well established that a defendant in a criminal case is entitled to a "theory of defense" instruction if a timely request is made, the evidence supports the proffered instruction, and the instruction correctly states the law, *United States v. Lewis,* 718 F.2d 883, 885 (8th Cir.1983). In this case, however, defendant put on no evidence to support any theory of defense instruction beyond what was given. The court correctly advised the jury of the effect of the defendant's plea of not guilty and the government's burden of proof on the essential elements. *See United States v. Fuel,* 583 F.2d 978, 989 (8th Cir.1978). No further instruction was required.

■ (3) The trial court also refused to give an instruction requested by the defendant relating to bias and hostility of witnesses. The rejected instruction read as follows:

You may also consider any demonstrated bias, prejudice or hostility of a witness toward the Defendant in determining the weight to be accorded to his testimony.

The court did read an instruction that read:

The testimony of an informer who provides evidence against a defendant for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against defendant.

The trial court also instructed the jury on the general credibility of witnesses and burden of proof. There was no testimony or evidence of any bias or prejudice that was not covered by the instruction given. The defendant's instruction was properly refused.

■ (4) Finally, appellant asserts as error the fact that the judge, at the request of the jury, permitted the jury to hear a second playing of government's Exhibit 2. Appellant contends that this action impermissibly highlighted that exhibit over other

evidence. It is within the trial court's discretion to replay a tape at the jury's request. *United States v. Koessel*, 706 F.2d 271, 275 (8th Cir.1983). Furthermore, prior to replaying the recording, the judge repeated his previous instruction pertaining to the jury's duty to determine the facts from all the evidence and the reasonable inferences arising from such evidence. The record shows that the court did not abuse its discretion by replaying the tape.

Affirmed.